COMMONWEALTH OF VIRGINIA
*CIRCUIT COURT OF FAIRFAX COUNTY*
**4110 CHAIN BRIDGE ROAD**
**FAIRFAX, VIRGINIA 22030**
**703-691-7320**
**(Press 3, Press 1)**

**Pamela Ononiwu vs. Fairfax County School Board**

**CL-2024-0013090**

**TO:   Fairfax County School Board**
**8115 Gatehouse Rd., Suite 5400**
**Falls Church VA 22042**

### SUMMONS – CIVIL ACTION

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the Clerk's office of this Court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment or decree against such party either by default or after hearing evidence.

**APPEARANCE IN PERSON IS NOT REQUIRED BY THIS SUMMONS.**

Done in the name of the Commonwealth of Virginia, on September 16, 2024.

**CHRISTOPHER J. FALCON, CLERK**

**By:**
_____
**Deputy Clerk**

**Plaintiff's Attorney:   Pro Se**

VIRGINIA:

IN THE CIRCUIT COURT OF FAIRFAX COUNTY

A.O., by next friend PAMELA ONONIWU,
        Petitioner,

V.

FAIRFAX COUNTY SCHOOL BOARD,

        Respondent.

SERVE:

        Fairfax County School Board

        8115 Gatehouse Rd.

        Suite 5400

        Falls Church, VA 22042



Case No. 2024 13090

FILED
CIVIL INTAKE

2024 SEP 13 P 4: 04

CHRISTOPHER J. FALCON
CLERK, CIRCUIT COURT
FAIRFAX, VA

## APPEAL OF ADMINISTRATIVE DUE PROCESS HEARING DECISION

Petitioner Pamela Ononiwu, on behalf of Student A.O., a minor, appeals the decision rendered by the administrative law judge (ALJ) in the due process hearing concerning the Manifestation Determination review and educational placement of Student A.O., pursuant to 34 CFR 300.516; § 22.1-214 D of the Code of Virginia and the Individuals with Disabilities Education Act (IDEA). The hearing officer's decision violated the procedural rights of Student A.O. and parent under both IDEA and Section 504, and

failed to comply with relevant state and federal regulations governing the due process hearing.

**Grounds for Appeal**

**1. Student A.O. Should Be Returned to the Previous Educational Placement Pending the Outcome of This Appeal.**

Pursuant to 34 CFR § 300.518 and § 300.533, a student shall remain in their current educational placement during the pendency of any administrative or judicial proceeding unless the parent and the local educational agency (LEA) agree otherwise. In this case, the parent never agreed to a change in placement, and Fairfax County Public Schools (FCPS) did not convene a placement meeting or offer an alternative placement before unilaterally changing Student A.O.'s school placement.

The failure of FCPS to adhere to this "stay-put" provision during the due process hearing process constitutes a violation of Student A.O.'s rights under IDEA and should result in their immediate return to the previous educational placement.

**2. Violations of the Rights of the Parties During the Due Process Hearing**

The parent's rights, as well as Student A.O.'s, were violated during the due process hearing, specifically in contravention of 34 CFR § 300.512 and Va. Code § 22.1-214 C,

which outline the rights of parties to be accompanied and advised by counsel and by individuals with special knowledge or training in the area of special education. The hearing officer unilaterally decided mid-hearing that the parent could no longer be accompanied by an individual with special knowledge, a violation of both federal and state law. Furthermore, the hearing officer did not ensure that the parent had the opportunity to present evidence, confront witnesses, or cross-examine them as required by law.

### 3. Failure to Comply with the Timeline for an Expedited Due Process Hearing

The parent filed an expedited due process hearing request under IDEA on February 6, 2024. Pursuant to 34 CFR § 300.532(c), an expedited due process hearing must occur within 20 school days of the date the request is received, and a determination must be made within 10 school days after the hearing. The hearing began on March 4, 2024, and continued on March 5 and 7, 2024, exceeding the timeline requirements. The delay in rendering a decision constitutes a procedural violation of the regulations governing expedited hearings under IDEA.

### 4. Inadequate Findings of Fact and Legal Conclusions by the Hearing Officer

The decision rendered by the hearing officer failed to meet the requirements set forth in 34 CFR § 300.513 and 34 CFR § 300.532. Specifically, the hearing officer's decision did not include:

- Relevant findings of fact that were determinative of the issues in the case,

- Legal principles on which the decision was based, including references to controlling statutes, case law, and regulations,

- An explanation of the basis for the decision on each determinative issue.

This failure to provide an adequate explanation for the decision leaves the parent and student without a clear understanding of the basis for the ruling and further impairs their ability to appeal.

## 5. Procedural Violations During the Manifestation Determination Review (MDR)

The hearing officer's decision should also be overturned due to significant procedural violations during the Manifestation Determination Review (MDR). The non-causal MDR finding should be set aside because:

- The parent's right to counsel was truncated when their counsel was dropped from the call and muted, violating their procedural due process rights.

- When the parent attempted to reestablish communication with counsel, they were requested to be forcibly removed from the meeting by the school's resource officer, at the behest of the school administrator. The proposed removal was unjustified as the parent was merely trying to ensure full representation for Student A.O.

- Relevant evidence that could have impacted the MDR decision was not considered.

These actions not only deprived the parent of their right to be represented but also undermined the fairness of the MDR process, which should be subject to review and correction.

**Conclusion**

The violations outlined above demonstrate that Student A.O. and their parent were deprived of their due process rights under IDEA and Section 504. Therefore, this court should:

1. Return Student A.O. to their previous educational placement pending the outcome of this appeal, pursuant to 34 CFR § 300.518.

2. Overturn the decision of the administrative law judge based on the failure to comply with federal and state procedural safeguards.

3. Overturn the non-causal MDR hearing decision by Fairfax County Public Schools.

WHEREFORE, these premises considered, Petitioner A.O. by next friend Pamela Ononiwu, prays that this Court overrule the opinion of the Administrative Law Judge.

Respectfully submitted,

A.O., next of friend Pamela Ononiwu.

BY:

Pamela Ononiwu

7726 Gunston Plaza #378

Lorton, VA 22199-0378

571-969-5726

FCPSLawsuit@gmail.com



4020 University Drive, Suite 300
Fairfax, Virginia 22030
T: 703.691.1235
F: 703.691.3913

Jakob T. Stalnaker
Writer's email: jstalnaker@bklawva.com
B&K File No. 4958-294

February 12, 2024

*Via electronic mail (rhartsoe@hartsoemorgan.com)*

Robert Hartsoe, Esq.
Hartsoe & Morgan, PLLC
4084 University Drive
Suite 100
Fairfax, Virginia 22030

RE:     ███████ **v. Fairfax County Public Schools**
        **Special Education Due Process Hearing**

## ANSWER OF FAIRFAX COUNTY PUBLIC SCHOOLS

Dear Hearing Officer Hartsoe:

      The following is Fairfax County Public Schools' ("FCPS") Answer to the February 6, 2024 due process hearing request ("Complaint") filed by Pamela Ononiwu ("Parent"), *pro se*, concerning her child, ███████████ ("█████" or "Student"). This response is based on information currently known and may be amended or supplemented as additional information becomes available. Any allegation contained in the Complaint not expressly admitted herein is denied.

### Introductory Note as to Jurisdiction

      While Parent files this proceeding pursuant to the provisions of the Individuals with Disabilities Education Act ("IDEA") and its implementing Virgina regulations – specifically those providing for expedited due process hearings, 8 VAC 20-81-160(E) – the Student is not covered by IDEA's procedures here. As explained below, the Parent has repeatedly refused an individualized education program ("IEP") or services for the Student. In that situation, the Student is not covered by IDEA's procedural requirements – including specifically those concerning student discipline. 20 U.S.C. § 1415(k)(5); 34 CFR § 300.534(c)(1)(ii), 8 VAC § 20-81-160(H); *see M.G. v. Crisfield*, M.G. v. Crisfield, 547 F. Supp. 2d 399, 420 (D. N.J. 2008) (noting that the relief available in 20 U.S.C. §1415(k)(5) "presupposes that the student has, or will have, an Individual Education Plan under the IDEA and has therefore consented to classification and the receipt of 'special education and related services' under the IDEA."), *Thomas v. Empire Springs Charter Sch.*, C.D. Cal. No. EDCV191891JGBSPX, 2021 WL 4348732, at *6 (C.D. Cal. Mar. 5, 2021) (concluding that even where a student had previously received services, where a parent refused services, 20 U.S.C. §1415(k)(5) did not apply), aff'd, 9th Cir. No. 21-55284, 2022 WL 171935 (9th Cir. Jan. 19, 2022). Rather, the Student is covered by the more general procedural requirements of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

Since in any event FCPS' Section 504-only hearing procedures (available at https://www.fcps.edu/sites/default/files/media/pdf/Section504Manual.pdf and attached) utilize the Virgina Supreme Court's hearing officer list, FCPS is not objecting to the appointment of the Hearing Officer here.  Nor, given that a student disciplinary matter is involved, does FCPS object generally to an expeditious resolution of this dispute.  *FCPS states, however, that the provisions of the provisions of Virginia's IDEA regulations, including those pertaining to expedited due process hearings and the timelines applicable, do not apply*.

## I.    **Brief Factual Background**

████ is a twelve-year-old seventh-grade student currently (for the 2023-2024 school year) who has been attending Robinson Middle School.  ████ began attending Fairview Elementary School for Kindergarten in 2017.  ████ was found eligible for a 504 plan in October 2018.  She was again found eligible for a 504 plan in October 2021.

In December 2018, following an IDEA evaluation, ████ was found eligible for special education under IDEA as a student with an Emotional Disability, and Parent consented to that decision in March 2019.

In December 2021, at ████'s triennial reevaluation meeting, the eligibility committee again determined that ████ was eligible as a student with an Emotional Disability but was ineligible in the category of Other Health Impairment.  That prior written notice is attached and incorporated herein.  Parent consented to ████'s eligibility in the category of Emotional Disability, but disagreed with the determination that ████ was ineligible in the category of Other Health Impairment.  The eligibility committee determined that ████ "displays limited engagement and withdrawal behaviors within the classroom setting due to her anxiety documented under emotional disability and therefore d[id] not require specialized instruction as a student with an other health impairment."

Between December 10, 2020 and August 16, 2022, the IEP team met no less than fourteen times in an effort to complete an IEP for ████, culminating in FCPS proposing a completed IEP providing for a Free Appropriate Education ("FAPE") on August 26, 2022.  The prior written notice associated with that IEP process is attached and incorporated herein.  Importantly however, as noted on the prior written notice, the Parent did *not* agree with the proposed IEP.

In the spring of 2022, the IEP team again considered services and placement at the base school setting with comprehensive site services at Saratoga Elementary School.  However, FCPS concluded that would not provide ████ with FAPE because she needs a highly structured environment with clear expectations and access to clinical and behavioral support in light of her emotional and behavioral issues.  FCPS also considered private placement, but rejected that because that would not provide ████ FAPE in the least restrictive environment, and the team did not have data supporting the need for private placement.  Instead, FCPS concluded that placement at FCPS' Burke School would allow ████'s needs to be met in the least restrictive environment in the public school system.  Burke School is a separate public school facility providing intensive, small group special education, and clinical and behavioral support, for students with emotional and behavioral needs.

During the summer of 2022, Parent raised allegations that ████ was being bullied at school.  FCPS staff reported, however, that it was ████ who was bullying other students.

In the IEP team's August 16, 2022 proposed IEP, FCPS offered goals in the areas of social skills, executive functioning, reading, writing-written language, mathematics, and behavioral improvements and classroom behavior.  As accommodations, FCPS proposed frequent breaks, graphic organizers, reading to ████ on demand, access to standards of learning audio, a spelling

dictionary, a calculator, shortened assignments, defined limits and expectations, and positive reinforcement, as well as numerous other accommodations.  FCPS proposed 29.75 hours per week of special education services in the area of emotional disability, as well as 1 hour per month of counselling.  Of those services, 100 percent would occur in a special education instructional setting, specifically Burke School.  FCPS staff also agreed to continue collecting FBA data throughout the fall of 2022.  Parent did not consent to this proposed IEP.  In March 2023, ███████ began attending Bonnie Brae Elementary School for sixth grade.

In June 2023, the IEP team met to begin developing ███████'s annual IEP.  Over the summer, the IEP team met seven times to continue developing ███████'s IEP.  FCPS proposed an FBA to collect data and determine the functions of ███████'s behavior, along with the Collaborative and Productive Solutions ("CPS") model, and confirmed that it could be implemented pending Parent's consent.  Parent never provided consent for the 2023 FBA.

In August and September 2023, the IEP team met, but Parent failed to attend either of the meetings, not responding and later alleging scheduling conflicts, respectively.  Parent attended the next meeting in October 2023, and the IEP Team discussed tutoring options for ███████, as well as the CPS model and the Assessment of Lagging Skills and Unsolved Problems ("ALSUP") which can be completed by the school.  In November, the IEP team attempted to meet to further develop ███████'s IEP, however Parent failed to attend both meetings.  The IEP Team met again in December 2023, and attempted to meet in twice in January 2024.  Both January meetings were unable to occur, with Parent arriving 20 minutes late to the first and not attending the second meeting.  Again, as no parental consent has been provided for an IEP.  As a result, ███████ does not have and never has had an IEP in place.  Consequently for seventh grade, ███████ began the 2023-24 school year as a regular education student with a Section 504 plan.

███████'s current 504 plan, dated September 18, 2023 provides her the following accommodations: (1) allowing ███████ a break in a designated area in or near the classroom, (2) access to identified staff members and parent with trauma informed training, including a daily check in every morning and on student request, (3) chunking of assignments into smaller parts with scheduled breaks after each part; (4) frequent teacher check-ins for understanding; (5) access to small group instruction; (6) extended time for independent work; and (7) access to social skills instruction.  She also receives frequent breaks as a testing accommodation.

## II.   **Affirmative Defense**

### A.  **Lack of Cooperation**

Whether under the provisions of IDEA, including 20 U.S.C. § 1415(i)(2)(C) (fashioning of appropriate relief and equitable considerations) and 20 U.S.C. § 1412(a)(10)(C) (limitations on relief), as well as the many judicial and administrative decisions considering relief in the IDEA context, relief may be limited or denied in cases of lack of parental cooperation, and/or unreasonableness. *See e.g.*, *Torda v. Fairfax Cty. Sch. Bd.*, 2012 WL 2370631 (E.D. Va. 2012); *M.M. v. Sch. Dist. of Greenville Cty.*, 303 F.3d 523, 536-37 (4th Cir. 2002); *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635 (S.D.N.Y. 2011); *Dep't of Educ., State of Hawaii v. M.F.*, 57 IDELR 157 (D. Hawaii 2011) (overturning hearing officer's decision which did not consider Parents' unreasonable conduct); *Rockwell Independent Sch. Dist. v. M.C.*, 116 LRP 9727 (5th Cir. Mar. 10, 2016) (denying tuition claim where Parents "broke down" IEP development process); *Fairfield Bd. of Educ.*, 69 IDELR 21 (SEA CT 2016) (finding Parents' conduct as "unreasonable," a hearing officer denied their reimbursement request); *In re: Student with a Disability* 106 LRP 64257 (SEA VA 2003) (parents did not act in good faith and deliberately tried to thwart, frustrate, and sabotage LEA efforts to provide FAPE); *Bettinger v. New York City Bd. of Educ.*, 49 IDELR 39 (S.D.N.Y.), or ordinary principles of estoppel, *XXXXXX by Smith v. Arlington Cnty. Sch. Bd.*, E.D. Va. No. 120CV817LMBTCB, 2021 WL 2324164, at *12 (E.D. Va. June 7, 2021), the Parent's

lack of cooperation here bars the claims here. The obligation to cooperate goes beyond showing up for meetings (something the Parent largely did not do), and includes timely providing information in your possession, so that the school division can make informed decisions. Here, the Parent refused to agree to an FBA in 2023, repeatedly failed to attend IEP team meetings once they were scheduled, and refused to consent to the resulting IEPs. As a result, her claims should be dismissed for a lack of cooperation.

### III.   <u>Response to the Complaint</u>

This student is covered by the provisions of Section 504, and given the Parent's refusal of any IEP for the Student at any time, she is not covered by the provisions of IDEA with respect to discipline. 34 CFR 300.534(c)(1)(ii). Here, the Parent has repeatedly refused services under IDEA. Accordingly, the Student does not come within the procedural discipline protections of IDEA. Because the Parent has not agreed to an IEP for the Student, for IDEA purposes, the Student is treated as a regular student. 34 CFR § 300.518(a).

Under Fairfax County School Board Regulation 2602.38P(D)(8), when a student covered by a Section 504 Plan is disciplined under certain circumstances, they are entitled to a causality determination, in which a committee determines "whether or not the misconduct has a causal relationship to the student's disability." Fairfax Cnty. Sch. Bd. Reg. 2602.38P(D)(8)(b). If it is determined that the misconduct was caused directly by the disability, the student may not be expelled or suspended for more than ten days. *Id.* at (D)(8)(c). If the misconduct is not caused by the disability, the student can be disciplined as a normal student. *Id.* at (D)(8)(d).

Under a Manifestation Determination Review ("MDR"), an MDR team, determined by the student's IEP team, determines whether misconduct is a manifestation of the student's disability, if either of two conditions is met: (1) the conduct was "caused by, or had a direct and substantial relationship to, the students disability" or (2) the conduct was "a direct result of the failure of FCPS to implement the IEP." *Id.* at (D)(6)(b).

The MDR team's findings, based on "all current and available data" as well as the letter from Student's doctor provided by parent, show that the conduct was not directly caused by Student's disability. The MDR Team concluded that the assault of a non-staff member in the student bathroom by Student was not a manifestation of ▮▮▮▮'s disability, and that no IEP had been implemented because Parent had not agreed to an IEP and repeatedly missed IEP meetings. As a result, the team also concluded that the conduct was not a "direct result of the school division's failure to implement the IEP."

Under either the Section 504 causality standard or the IDEA causality standard, Student's conduct was not caused by her disability. Likewise, it was not caused by the school division's failure to implement an IEP, because no agreed IEP existed, and the school division properly implemented Student' 504 plan. The school division's MDR findings are attached and incorporated herein.

As far as any substantive IDEA responsibilities are concerned, FCPS *offered* ▮▮▮▮ an appropriate program in the least restrictive environment in its August 16, 2022 proposal of free appropriate education, and placement at the Burke School. In *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017), the Supreme Court held that an appropriate education for a student with a disability is one that is, "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." The Court further explained that typically, an IEP should be "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Id.* (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 203-04 (1982). In so holding, the Court

reaffirmed that an IEP must be "reasonable", but not "ideal". *Id.* (citing *Rowley*, 458 U.S. at 206-07). The program offered by FCPS exceeds that standard, and included 29.75 hours per week of special education services, and one hour per month of counselling. FCPS' proposal likewise would allow ███ to learn and develop in the structured environment of the Burke School, and FCPS repeatedly accommodated Parent's requests for new and additional data for ███'s FBA.

Since that offer of FAPE, FCPS has sought to develop an initial IEP for the 2023-24 school year, including an FBA (which Parent has not consented to) and ultimately, to develop a BIP for ███, as well as an IEP.

The Complaint consists of multiple alleged violations, which FCPS denies in their entirety. First, Parent claims that FCPS has failed to implement ███'s "initial IEP…in accordance with Virginia partial consent guidelines since February 2021." Parent has never consented to an IEP, and was informed in August 2022 that "the proposal dated August 16, 2022 is an initial IEP proposal" and that ███ "w[ould] continue to be a general education student who receives the services and accommodations outlined in her Section 504 plan until FCPS receives [Parent's] consent decision." Additionally, FCPS informed Parent at the beginning of 2023-2024 school year that the IEP team at Robinson Middle School was planning to meet in order "to develop an initial IEP for ███." As there is no IEP in place, Parent's contention that FCPS has failed to implement an IEP is wholly without merit.

Second, Parent claims that FCPS is violating the "stay put" placement provision of the IDEA by placing ███ in an alternative instructional arrangement ("AIA") where she is supposedly not receiving educational instruction. Parent's allegation that ███ has been subjected to "restraint and seclusion" is without merit. An in-school suspension or detention, in a classroom with a door (as many classrooms have) does not qualify as restraint or seclusion.

With respect to the "stay put" allegations, as stated above, Parent has never consented to an IEP for ███. As a result, any prior placement of ███ is as a general education student with Section 504 accommodations. Section 504 itself does not contain any "stay-put" provision comparable to IDEA's. "Unlike the IDEA, however, there is no 'stay put' provision in Section 504 of the Rehabilitation Act, and, consequently, 'a 504 Plan does not give stay-put relief[.]'" *D.C. v. Freehold Reg'l High Sch. Dist. Bd. of Educ.*, D.N.J. No. CV 18-4147, 2019 WL 13256825, at *2 (D.N.J. Aug. 28, 2019) (quoting *D.S. v. Voorhees Twp. Bd. of Educ.*, No. 16-131, 2016 WL 7387413, at *7 (D.N.J. Dec. 21, 2016)). Parent has not agreed to *any IEP*, and Section 504 is a provision of the Rehabilitation Act, not the IDEA.

Third, Parent alleges with no specificity that "it is evident" that FCPS failed to implement ███'s 504 plan. FCPS denies that allegation in its entirety.

Finally, Parent asserts that FCPS relied on selectively chosen information to support a false narrative surrounding a December 6, 2023 incident and related MDR meeting. She alleges no specifics and FCPS denies that allegation in its entirety.

**IV.    Conclusion**

Based on the foregoing, FCPS respectfully requests that the Hearing officer dismiss all claims with prejudice.

Sincerely,

*Jakob J. Stalnaker*

Jakob T. Stalnaker

*Counsel for Fairfax County Public Schools*

cc:      Pamela Ononiwu (by electronic mail to ███████████████)
         Kristina Roman, Coordinator of Due Process and Eligibility, FCPS
         John F. Cafferky, Esq.
         Brian Miller, Esq. (by electronic mail to MillerLawLimited@aol.com)



# Section 504 Procedures Manual

## DEPARTMENT OF SPECIAL SERVICES

### JANUARY 2022



# Table of Contents

**Purpose of Section 504** ........................................................................................3

**Identification and Evaluation Procedures** ...........................................................4

    Referral.................................................................................................................. 4

    Local Screening Committee ...................................................................................4

    Making Initial Qualification Decisions .....................................................................5

**504 Plans** ...............................................................................................................8

    Knowledgeable Committee Membership..................................................................8

    504 Plan Development ............................................................................................8

    Plan Review and Revision......................................................................................9

    Discipline Procedures...........................................................................................10

    Transfers ...........................................................................................................10

**Reevaluation**.........................................................................................................12

**Records** ................................................................................................................13

**FCPS Operating Procedures for Section 504 Impartial Hearings** ......................14

    Requesting an Impartial Hearing .........................................................................14

    Appointment of Hearing Officer ...........................................................................14

    Pre-Hearing Procedures ......................................................................................14

    Hearing Procedures ............................................................................................15

**Appendix A** ...........................................................................................................17

    Forms ................................................................................................................17

**Appendix B** ...........................................................................................................23

    IDEA and Section 504 .........................................................................................23

**Appendix C** ...........................................................................................................24

    504 Fact Sheet ...................................................................................................24

**Appendix D** ...........................................................................................................26

    Section 504 Procedural Safeguards ..................................................................... 26

**Appendix E** ...........................................................................................................27

    Section 504 Frequently Asked Questions ..............................................................27

    General Questions ..............................................................................................27

    504 Data Review and Evaluation..........................................................................29

    504 Qualification (Initial and Reevaluation)...........................................................32

    504 Plan ............................................................................................................33

    Additional FAQs……………………………………………………………………… 36

**Appendix F**............................................................................................................40

    Resources ..........................................................................................................40

**Appendix G** ..........................................................................................................41

    Acronyms ...........................................................................................................41

# Purpose of Section 504

Section 504 of the Rehabilitation Act of 1973 (Section 504), as amended, is designed to eliminate discrimination based on disability in any program or activity receiving federal financial assistance. This act requires that no qualified student who demonstrates a physical or mental impairment that substantially limits one (or more) major life activity (e.g., self-care, performing manual tasks, walking, seeing, hearing, speaking, breathing, working, learning, eating, sleeping, standing, lifting, bending, reading, concentrating, thinking, operation of a major bodily function, communicating) shall be excluded from participation in, be denied the benefit of, or be subject to discrimination in any program or activity offered by Fairfax County Public Schools (FCPS). An impairment that is episodic or in remission is a disability if it substantially limits a major life activity when active.

The determination of a limitation to one or more major life activity must be made without regard to any ameliorative effects of mitigating measures (e.g., medication, medical supplies, equipment, low-vision devices, prosthetics, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies, etc.).

FCPS shall offer a free appropriate public education (FAPE) to each qualified student with a disability. Services provided to qualified students are not required to produce identical results or level of achievement with nondisabled peers. Services must be designed to offer an equal opportunity to gain the same benefit within the most integrated setting appropriate.

A student who is not disabled, but has a record of, or is regarded as, having a disability under Section 504 is protected from discrimination based on disability insofar as an alleged discriminatory action based on that history or perception. The fact that a student has a "record of" or is "regarded as" having an impairment is insufficient by itself to require accommodations. A student qualifies for services under Section 504 when that individual meets the definition of disability under Section 504, and is determined to be eligible by a knowledgeable committee.

FCPS School Board Regulation 1454, Declaration of Nondiscrimination—Students With Disabilities, designates procedures for the implementation of Section 504 in FCPS.

# Identification and Evaluation Procedures

FCPS has a responsibility to identify and evaluate those students who are believed to qualify as disabled under Section 504.   FCPS also has a responsibility to provide notice to a student's parent(s) and/or guardian prior to evaluation, identification, reevaluation, and/or placement.

## Referral

When there is reason to suspect that a general education student has a disability and is in need of accommodations, modifications, and/or services in order to access the programs and activities offered by FCPS, a referral shall be made to the local screening committee (LSC) for review.

Referrals can be made either orally or in writing; both types of referrals are documented on a *Multipurpose Referral* form (SS/SE-5).   If parents make an oral referral, they should be asked if they want to complete the *Multipurpose Referral* form or the principal or designee shall complete it on their behalf.

If parents make a referral to a teacher, they should be directed to the principal or designee  selected to receive referrals.   Whether provided orally or in writing, the date the referral is received  must be noted on the *Multipurpose Referral* form.   Page two of the *Multipurpose Referral* form (SS/SE-5A) must be completed by the student's classroom teacher, or other appropriate school staff member if the student has more than one teacher.

## Local Screening Committee (LSC)

The LSC must convene within ten business days following the receipt of a referral.   The date the referral was received and the date on which the LSC convened are recorded on the *Student Audit Trail* (SS/SE-8).

For all referrals, the LSC must consist of the following members, <u>at a minimum</u>:

- Principal or designee

- School psychologist

- Special education teacher

- General education teacher

- Referral source, except if inclusion of the referral source would breach the confidentiality of the student.

The parents must be invited to the LSC meeting orally and in writing by way of a *Notice of Local Screening Meeting* (SS/SE-83).   This notice letter should be accompanied by the following documents:  *Virginia Special Education Procedural Safeguards Requirements* (SS/SE-4), *Section 504 of the Rehabilitation Act of 1973 Procedural Safeguards* (SS/SE-92), and the *Parent Information* form (SS/SE-127).  Schools are advised to contact the parents by telephone or in person to explain the local screening process prior to the provision of these documents.  The parents must be notified of the meeting early enough to ensure they have an opportunity to participate; however, the meeting must be held within ten business days of the referral date.   If parents cannot attend the meeting, school staff members  should consider alternative ways for the parents to participate (e.g., conference call).

During the LSC meeting, the committee shall review information from a variety of sources.   The information reviewed should pertain to the student's functioning in the school environment and should include, as available, the referral; educational records such as aptitude and achievement tests, report cards, and/or teacher recommendations; oral or written observations; evaluations of adaptive behavior; social and cultural background; medical, psychological, and/or other specialty reports; and parent information.  Following this review, the LSC may do the following:

- Determine that an evaluation for special education services under the Individuals with Disabilities Education Act (IDEA) is not warranted at this time.
- Refer the student to another resource such as child study team (CST), teacher assistance team (TAT), multi-tiered systems of support (MTSS) team, professional learning community-response team (PLC-RT), etc.
- Determine that there is a need for an evaluation for special education services under IDEA.
- Determine that there is a need for an evaluation for qualification under Section 504.
- Determine whether the student qualifies as disabled under Section 504.

## Making Initial Qualification Decisions

If, upon review of the *Multipurpose Referral* form and available information, the LSC determines that there is insufficient evidence to suspect that a disability warrants an evaluation for special education under IDEA, but suspects a disability under Section 504, the LSC will  complete a *Notice Not to Evaluate* (SS/SE-13) to indicate the decision not to evaluate for special  education eligibility.  The *Local Screening Committee Report* (SS/SE-14) will reflect "Do not  conduct evaluation" and "Pursue the following action" with a notation that the LSC will pursue a Section 504 evaluation.

In some cases, the LSC may determine that while a special education evaluation is warranted, there may be sufficient existing information to consider whether the student would qualify with a disability under Section 504.  In these cases, the *Local Screening Committee Report* will reflect that the committee chose to "Conduct Evaluation" [for special education], and the committee will determine recommended  assessments for special education.   The LSC will then indicate on the *Local Screening Committee Report* that it will move forward to consider initial Section 504 qualification.

If the LSC chooses to reconvene at a later date to hold the 504 initial qualification determination meeting, a *Notice of Section 504 Meeting* (SS/SE-281) will be completed and sent to the parent and/or guardian (and student, if appropriate) along with a copy of the *Section 504 of the Rehabilitation Act of 1973 Procedural Safeguards* (SS/SE-92).

The LSC shall complete a *Section 504 Qualification* form (SS/SE-85) for students suspected of having a disability under Section 504.   The *Section 504 Qualification* form has two pages:  page one includes data review and evaluation, and page two includes the qualification criteria (504 eligibility).

Page one of the *Section 504 Qualification* form must document the following:

- Demographic information
- Names and titles of knowledgeable committee members
- Presenting problem

- Data review (sources of evaluation and current information considered)

- Evaluation (considering the need for additional data in order to determine 504 qualification)

- If additional data is needed, the knowledgeable committee will recommend required assessments.

- Parental consent (required for all initial 504 evaluations as well as any formal  assessments).

  In order to move forward to consideration of an <u>initial</u> 504 qualification, written parent consent must be provided for the evaluation (whether or not formal assessments are required).  If the parent refuses to give consent to a 504 evaluation, the  committee will not move forward to page two of the form and will not make a decision regarding Section 504 qualification.

  If formal assessments are recommended and parental consent is provided, the meeting will adjourn and members will reconvene within 65 business days of the referral to allow time for the completion of assessments.  ***Please note that all assessments must be completed within 65 business  days of the LSC referral date***.

  In the event that there is sufficient data to utilize for an evaluation, and the parent has given consent for an initial 504 evaluation, the  knowledgeable committee may immediately move forward to 504 qualification consideration.

Page two of the *Section 504 Qualification* form must document the following:

- **Identification of the physical and/or mental impairment(s)**

  – "Physical or mental impairment" means any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems:  neurological; musculoskeletal; special sense organs; cardiovascular; reproductive; digestive; genito-urinary; hemic and lymphatic; skin; and endocrine, or any mental or psychological disorder such as intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disability.

- **The major life activity (or activities) limited by the impairment(s)**

  – "Major life activity" includes, but is not limited to, caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, eating, sleeping, standing, lifting, bending, reading, concentrating, thinking, and communicating.

  – A major life activity also includes the operation of a major bodily function, including, but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

  – An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.

- **Description of the limitation of the student's impairment on the identified major life activity (or activities)**

  – An impairment that is episodic or in remission is a disability if it substantially limits a major life activity when active.

  – Individuals being considered for qualification under Section 504 should not be  disqualified solely because they manage their own adaptive strategies or receive  accommodations (including informal or undocumented ones) that have reduced or eliminated the effects of a physical or mental impairment.

- – The determination of limitation to one or more major life activity must be made  without regard for any ameliorative effects of mitigating measures that include, but are not limited to, a student health care plan (HCP), medication, medical supplies, equipment, low-vision devices[i],  prosthetics, hearing aids and cochlear implants or other implantable hearing devices,  mobility devices, oxygen therapy equipment and supplies, assistive technology, accommodations, auxiliary aids or services; or learned behavioral or adaptive neurological modifications.

- **The LSC's determination of Section 504 qualification**

  The LSC will state whether or not the student qualifies with a disability under Section 504.

- **A list of the LSC members participating in the determination**

  The parent(s) and/or guardian (and student, if appropriate) should also be included in this list if they are present at the meeting.  All participants should provide their signature next to their printed name and role or title.  It should be explained that parent consent for qualification is not required and the signatures only indicate participation. In the event that the meeting was held virtually (online), participation signatures will not be required.

[**Please note** that the Office for Civil Rights (OCR) has stated that school divisions are not required to obtain extensive documentation to identify that students with the following impairments are  qualified under Section 504 and the ADA:  diabetes, epilepsy, bipolar disorder, and autism (*Dear  Colleague Letter*, 58 IDELR 79 (OCR 2012).]

A copy of the *Section 504 Qualification* form (SS/SE-85), along with the *Local Screening Committee Report (*SS/SE-14*)* and the *Section 504 of the  Rehabilitation Act of 1973 Procedural Safeguards* (SS/SE-92), shall be provided to the parent.  **(Please also note that in the online platform ["SEA-STARS"], the 504 process documents for a first-time 504 qualification are obtained by selecting the "504 Initial Qualification" process in the dropdown menu.)**

---

[1] Note – Low-vision devices do not include ordinary eyeglasses or contact lenses.    The ameliorative effects of ordinary eyeglasses or contact lenses may be considered in determining whether the impairment  substantially limits a major life activity.    Ordinary eyeglasses are those that are intended to fully correct visual acuity or eliminate refractive error, and low-vision devices are those that magnify, enhance, or otherwise augment a visual image.

# 504 Plans

## Knowledgeable Committee Membership

If the student qualifies with a disability under Section 504, a committee of knowledgeable people shall develop a 504 Plan within 30 calendar days following the initial qualification. Typically, the knowledgeable committee is made up of staff members who work directly with, or supervise, the student in the educational setting. The 504 Plan is a statement of the required accommodations, modifications, and/or services that FCPS will provide to a student.

The knowledgeable committee must include the following people:

- Principal or designee

- Teacher(s) who are, or will be, working with the student

  (Whenever possible, the committee should include those persons who will be responsible for implementing the proposed accommodations, modifications, and/or services.)

Other committee members such as the school psychologist, public health nurse, school social worker, school counselor, and/or related service provider(s) may be included as appropriate to the needs of the student.

The parent(s) and/or guardian must be invited to the Section 504 meeting. In addition, schools should, whenever possible, work with the student to solicit his or her feedback regarding 504 Plan supports and invite the student to participate in the meeting as appropriate.

## 504 Plan Development

Use the *Notice of Section 504 Meeting* (SS/SE-281) to invite the parent(s) and/or guardian to the meeting. A copy of the *Section 504 of the Rehabilitation Act of 1973 Procedural Safeguards* ("504 Procedural Safeguards") (SS/SE-92) must be sent with the notice, along with a copy of the *504 Plan Meeting Agenda* (SS/SE-339). The meeting notice, procedural safeguards, and agenda should be sent to the parents no less than 3 days in advance of the meeting, to allow the parents adequate time to review and prepare for the meeting.

During the 504 Plan meeting, the knowledgeable committee reviews the specific needs of the student in the educational setting and completes a *504 Plan* form (SS/SE-86), using the *504 Plan Meeting Agenda* to help ensure that the committee is addressing all of the student's pertinent disability-related needs. The 504 Plan includes accommodations, modifications, and/or services, including medication administration, necessary to provide the student an equal opportunity to access programs and activities and to demonstrate achievement. The accommodations, modifications, and/or services shall do the following:

- Reflect the unique needs of the student.

- Relate directly to the area of impairment.

- Address only what is necessary to ensure that the student has the opportunity to access programs and activities provided by the school system.

- Be specific enough in description to clearly indicate when and where the accommodations, modifications, and/or services will be provided during the school day and during school-related and/or sponsored activities.

The focus of the 504 Plan is on what is **necessary for the student as a result of the limitation of his or her impairment on one or more major life activity.**

The knowledgeable committee shall determine whether the student who qualifies as a student with a disability under Section 504 requires classroom testing accommodations and whether those accommodations or modifications should be provided for any state and/or district-wide assessments. These decisions shall be recorded on the appropriate *504 Plan Accommodations* form (SS/SE-86A, 86B, or 86D).

If the knowledgeable committee considers the read aloud (for the English: Reading Standards of Learning [SOL] assessment) or calculator accommodations, the committee must use the *Read Aloud or Audio Accommodation Criteria Form* (SS/SE-274) and/or the *504 Plan Calculator Criteria Form* (SS/SE-272) to determine whether the student meets the criteria to utilize the specific accommodation on the SOL tests.

In addition, discussions by a knowledgeable committee regarding the option to pursue credit accommodations can begin at any point after the student's 8th grade year. Committees shall use the *Credit Accommodation Eligibility Form* (SS/SE-353) to document their decision-making.

Federal law requires an annual English Language Proficiency (ELP) assessment to be administered to all students identified as English Learners (ELs) in grades K-12 ELP levels 1-5 and 9. ELs whose parent(s) and/or guardians have refused English for Speakers of Other Languages (ESOL) services are still required by federal law to participate in the annual assessment. The *WIDA ACCESS for ELLs* (English-language learners) and certain alternate tests are approved by the Virginia Department of Education (VDOE) to meet this requirement. For those ELs who also have a documented disability, IEP/504 Plan committees must work collaboratively with ESOL staff, utilizing the *WIDA ACCESS for ELLs* Accommodations Selections form (RF 7).

If the knowledgeable committee determines that there is currently no specific impairment-related limitation that requires accommodations, modifications, and/or services, this should be noted on the 504 Plan. This decision shall be reviewed by the knowledgeable committee on an annual basis (or more frequently, as needed), and the determination shall be noted on a current *504 Plan* document (SS/SE-86). (**Please note that in SEA-STARS, the 504 process documents for 504 Plans are obtained by selecting the "504 Plan" process in the dropdown menu.**)

A copy of the 504 Plan shall be provided to the parent and/or guardian following its completion. Parental consent is not required prior to the implementation of a 504 Plan for a student. The principal is responsible for adherence to the overall procedures and implementation of a 504 Plan. Each individual working with or supervising the student shall be provided access to the 504 Plan and will comply with the applicable components. The 504 Plan remains in effect as specified until either a new 504 Plan is developed, at least annually, or the knowledgeable committee determines through reevaluation that the student no longer qualifies as a student with a disability under Section 504.

## Plan Review and Revision

The principal or designee (generally, this is the 504 school-based coordinator [SBC]), is responsible for ensuring that 504 Plans are reviewed at least annually or more frequently as conditions warrant. 504 case managers are responsible for planning and facilitating these meetings. The purpose of this review is to determine the appropriateness of the Plan and to make any needed modifications. The participants in 504 Plan meetings should be those individuals relevant to the discussion of the student's

accommodations, modifications, and/or services.  At minimum, the committee must consist of at least one of the student's teachers and a principal or designee.  Use the *Notice of Section 504 Meeting* (SS/SE-281) to invite the parent and/or guardian to the meeting.  A separate SS/SE-281 may be used to invite the student, as well.  A copy of the *Section 504 of the Rehabilitation Act of 1973 Procedural Safeguards ("504 Procedural Safeguards")* must be sent with the notice, along with a copy of the *504 Plan Meeting Agenda* (SS/SE-339).

## Discipline Procedures

The knowledgeable committee shall convene for a Section 504 Causality Hearing to assess whether the behavior requiring disciplinary action was caused by or directly related to a qualified student's disability when the following is true:

- A decision is made to remove a Section 504-qualified student from school for more than ten consecutive school days in a school year.

- The Section 504-qualified student is subjected to a series of removals during a school year that will accumulate to more than ten school days.

Parent(s) and/or guardians should be notified with sufficient time to allow them the opportunity to attend, participate, and provide input at the Section 504 causality hearing.  The school shall use  the *Parent Notice of Section 504 Causality Hearing* (SS/SE-220A) to notify the parent(s) and/or guardian of the meeting.  A copy of the *504 Procedural Safeguards* (SS/SE-92) shall be included with the meeting notification letter.   The knowledgeable committee shall complete a *Section 504 Causality Hearing* form  (SS/SE-220) and forward it to the Superintendent's hearing officer when there is a recommendation for expulsion or exclusion.  The following scenarios apply:

- If a student is qualified under Section 504, and the committee determines that the student's conduct was caused by or had a direct and substantial relationship to the child's disability, and/or the student's conduct was a direct result of the school division's failure to implement the 504 Plan, then the determination is that the conduct is a manifestation of the student's disability.  The student may not be disciplined in the same manner as a nondisabled student.  The committee shall determine whether the student's educational program should be modified.

- If a student is qualified under Section 504, and it is determined that the student's conduct is not a manifestation of the student's disability, the student may be disciplined in the same manner as a nondisabled student, including the cessation of services.

- If a student qualified under Section 504 is receiving disciplinary action based on the illegal use and/or possession of illegal drugs or alcohol, and the individual is currently engaging  in the illegal use of drugs or alcohol, a committee of knowledgeable persons is not  required to convene, reevaluate the student, or determine whether there is a  direct and substantial relationship between the behavior and the disability.

## Transfers

When a student transfers into an FCPS school and/or program with a 504 eligibility and/or Plan, the 504 school based coordinator (SBC) must complete a 504 transfer process for the student, as soon as practicable, but no later than five school days following enrollment and/or first day of attendance.  (**In SEA-STARS, the 504 Transfer document is obtained from the 504 Process menu.)**  The receiving school is required to  implement the existing 504 Plan, as documented within the 504 transfer

document, until the knowledgeable committee convenes to review the student's needs and develops an FCPS 504 Plan within 30 calendar days of the student's enrollment.

# Reevaluation

The knowledgeable committee shall conduct a reevaluation of each student's qualification as a student with a disability under Section 504:

- Every three years
- More frequently, as necessary

The date of the student's initial or most-recent reevaluation of Section 504 qualification is documented on the 504 Plan.  The reevaluation date is then calculated by adding three years to the initial or most-recent reevaluation review date.  Prior to the reevaluation review date, information should be collected from teachers and other school staff members who work with the student for review at the reevaluation meeting.  The *Teacher Narrative* form (SS/SE-22) should be used to assist in data collection, along with a review of additional, relevant information

The knowledgeable committee shall convene a reevaluation meeting with the purpose of reviewing evaluation information and determining if the student continues to qualify as a student with a disability under Section 504.  The *Section 504 Qualification* form (SS/SE-85) is used to guide the committee's review and determination.  **(Note:  In the SEA-STARS system, documentation specific to the reevaluation process is utilized.  The 504 reevaluation documents may be accessed via the 504 tab, "Make Decision" button**.)  If existing data is sufficient to use for purposes of considering continued Section 504 eligibility, no parental consent is required for the reevaluation.  However, if additional individual assessments are needed in order to determine if the student continues to qualify, written parent consent for formal assessments is required.  Upon completion of assessments, the knowledgeable committee will reconvene and consider continued qualification under Section 504 (no more than 65 days following the referral).

# Records

Forms documenting the referral, evaluation, initial qualification, reevaluation, 504 Plan, and any causality hearings for a student considered for and/or qualified with a disability under Section 504 should be maintained in the student's scholastic record.  Commonly-used 504 forms, and translated versions, are available online at  fcps.edu/academics/academic-overview/special-education-instruction/special-education-procedural-support-12.

504-related records may include the following forms:

- *Multipurpose Referral* (SS/SE-5, 5A)
- *Notice of Local Screening Meeting* (SS/SE-83)
- *Section 504 of the Rehabilitation Act of 1973 Procedural Safeguards (SS/SE-92)*
- *Local Screening Committee Report* (SS/SE-14)
- *Notice of Section 504 Meeting (SS/SE-281)*
- *Section 504 Qualification*  (SS/SE-85)
- *504 Plan* (SS/SE-86)
- *504 Plan (Testing) Accommodations:*
    - *Elementary Accommodations* (SS/SE-86A)
    - *Middle School Accommodations* (SS/SE-86B)
    - *High School Accommodations* (SS/SE-86D)
- *Section 504 Causality Hearing* (SS/SE-220)
- *Parent Notice of Section 504 Causality Hearing* (SS/SE-220A)
- *504 Plan Read Aloud or Audio Accommodation Form* (SS/SE-274)
- *504 Plan Calculator Criteria Form* (SS/SE-272)
- *Credit Accommodations Eligibility Form* (SS/SE-353)
- *Special Permission Locally Awarded Verified Credit Accommodation (SPLAVC-A) Criteria Form* (SS/SE-348)
- *Section 504: Parent Consent for Individualized Assessment* (SS/SE-86G)
- *Consent to Exchange Confidential Student Information* (SS/SE-79A)

If a student transfers to another school within FCPS, the file is to be forwarded to the new school  in accordance with regulations.  Please refer to the *Management of the Student Scholastic Record,* Appendix A, regarding organization of student records.

The student's parent or guardian may examine his or her child's educational record upon request (see *Management of the Student Scholastic Record* manual).  Electronic records pertaining to a student, including those created within or added to the FCPS online platform for special education and Section 504 processes ("SEA-STARS"), are considered to be a part of the student's scholastic record.

# FCPS Operating Procedures for Section 504 Impartial Hearings

FCPS or the parent or guardian of a student (or an adult student) with a disability as defined by Section 504 may request an impartial hearing to resolve any disagreement regarding the identification, evaluation, accommodations, modifications, and/or services; provision of FAPE; or causality determination of the student with a disability.  Requests for a hearing that raise issues pursuant to both Section 504 and IDEA may, at the discretion of the hearing officer, be heard together through the IDEA hearing procedures provided by federal and state law, regulations, and FCPS policies.

## Requesting an Impartial Hearing

Requests for an impartial hearing shall be made in writing and delivered to the coordinator of Due Process and Eligibility.  The request shall include the name of the student, the address of the residence of the student (or available contact information in the case of a homeless student), the name of the school the student is attending, a description of the nature of the problem with supporting facts, and a proposed resolution of the problem.

If the request does not include all of the required information, it may be returned to the parents within five business days of receipt by the coordinator with a request to provide the missing information within five additional business days.  The remaining procedures will not proceed until the additional information is received from the parents.

A hearing may only be requested within one year of the date the parents knew, or should have known, about the alleged actions or facts that form the basis of the complaint.

FCPS will provide a written response to the request for hearing.  The response will be delivered to both the parents and the hearing officer within 10 business days of receipt of a request for a hearing that includes all of the required information.  If FCPS requests an impartial hearing, parents will have the same option to respond.

Assistance will be provided to persons who may need it in order to comply with the requirements to file a written request for an impartial hearing.

## Appointment of Hearing Officer

An impartial hearing officer will be appointed by the coordinator of Due Process and Eligibility from the list of special education due process hearing officers maintained by the Office of the Executive Secretary of the Supreme Court of Virginia.   The coordinator will contact the Office of the  Executive Secretary to request the name of a hearing officer within five business days of receipt of a request for a hearing that includes all of the required information for filing a request for a hearing and will follow up as necessary until a hearing officer is appointed.

## Pre-Hearing Procedures

Prior to the hearing, the hearing officer shall do the following:

- Convene a prehearing conference with the parties, unless the hearing officer determines such a conference is unnecessary.

- Identify the specific issues to be addressed during the hearing based on the request for hearing and any response provided by the other party.

- Schedule a hearing date and location with input from the parties and notify the parties in writing of such information.

- Ascertain whether the parties will be represented by counsel.

- Ascertain from the parents whether the hearing will be open or closed.

- Ensure that the hearing will be accurately recorded by a court reporter who is paid for his/her attendance by the school system.

- Have the authority to require that the student be evaluated.

- Require the parties to exchange a list of witnesses and any documents to be presented during the hearing at least five business days in advance of the hearing unless otherwise permitted  by the hearing officer for good cause shown, with a copy provided to the hearing officer as well.


## Hearing Procedures

The parties have the following rights in the hearing:

- To be represented by counsel with each party being responsible for its own attorneys' fees.

- To present evidence and cross-examine witnesses.

- To request that the hearing officer prohibit the introduction of evidence or the testimony of a witness that had not been disclosed five business days in advance of the hearing.

- To obtain a copy of the transcript of the hearing.

The hearing officer shall ensure the following in connection with the hearing:

- An atmosphere conducive to impartiality and that fairness exists.

- The issues raised in the hearing are limited to those identified in the request for a hearing and any response filed, or to any subsequent amendment to the request or the response when allowing such amendment is mutually agreed to by the parties or as otherwise permitted by  the hearing officer for good cause shown.

- The parties and their attorneys, advocates, or advisors comply with the impartial hearing officer's rules, and with relevant laws and regulations, and are not permitted to pursue hostile or irrelevant pursuits in questioning.

- Actions are taken to move the case to conclusion, including dismissing the pending  proceeding if either party refuses to comply in good faith with the impartial hearing  officer's orders.

- An accurate record of the proceedings is maintained.  The party requesting the hearing has the burden of proof.

- The hearing is completed within 45 calendar days of receipt of the request for a hearing or of a subsequent agreed upon amendment, unless an extension is granted at the request of either party for good cause or by mutual agreement of the parties.

The hearing officer shall issue a decision:

A written decision shall be issued to all parties setting forth findings of facts and conclusions of law based on the evidence presented in the hearing.   The decision shall be issued within 15 business days of the conclusion of the hearing.   The decision is final and binding unless either party files a timely civil action in an appropriate court.

Any questions regarding these procedures should be directed to the coordinator of Due Process and Eligibility.

# Appendix A

## Forms

All forms related to Section 504 and cited in this document may be found in the electronic forms cabinet on the FCPS Employee Hub: hub.fcps.edu/forms.  **Currently, schools are expected to use the SEA-STARS online platform to complete 504 Initial Qualification, Plan, Reevaluation, and Transfer processes.**

Forms documenting the referral, evaluation, initial qualification, reevaluation, 504 Plan, transfer, and any causality hearings for a student considered for and/or qualified with a disability under Section 504 should be maintained in the student's scholastic record.

### Section 504 of the Rehabilitation Act of 1973 "Procedural Safeguards" (SS/SE-92)

- se92
  Parents are provided a copy of the 504 procedural safeguards notice prior to evaluation, Child Find, identification, reevaluation, and/or placement.

- se92 (Arabic)
  Section 504 of the Rehabilitation Act of 1973 Procedural Safeguards (Arabic)

- se92 (Chinese)
  Section 504 of the Rehabilitation Act of 1973 Procedural Safeguards (Chinese)

- se92 (Farsi)
  Section 504 of the Rehabilitation Act of 1973 Procedural Safeguards (Farsi)

- se92 (Korean)
  Section 504 of the Rehabilitation Act of 1973 Procedural Safeguards (Korean)

- se92 (Spanish)
  Section 504 of the Rehabilitation Act of 1973 Procedural Safeguards (Spanish)

- se92 (Urdu)
  Section 504 of the Rehabilitation Act of 1973 Procedural Safeguards (Urdu)

- se92 (Vietnamese)
  Section 504 of the Rehabilitation Act of 1973 Procedural Safeguards (Vietnamese)

### Notice of Section 504 Meeting (SS/SE-281)

- se281
  This notice is sent to parents prior to their child's 504 Initial Qualification, 504 Plan, or 504 Reevaluation meeting.

- se281 (Arabic)
  Notice of Section 504 Meeting (Arabic)

- se281 (Chinese)
  Notice of Section 504 Meeting (Chinese)

- se281 (Farsi)
  Notice of Section 504 Meeting (Farsi)

- se281 (Korean)
  Notice of Section 504 Meeting (Korean)

- se281 (Spanish)
  Notice of Section 504 Meeting (Spanish)

- se281 (Urdu)
  Notice of Section 504 Meeting (Urdu)

- se281 (Vietnamese)
  Notice of Section 504 Meeting (Vietnamese)

## 504 Plan (SS/SE-86)

- se86

  SS/SE-86 504 Plan
  The 504 Plan form is completed by the knowledgeable committee during a student's 504
  plan meeting. Accommodations, modifications, and/or services necessary to afford the
  student the equal opportunity to access school programs and activities are addressed with
  the 504 Plan document.

- se86 (Arabic)

  504 Plan (Arabic)

- se86 (Chinese)

  504 Plan (Chinese)

- se86 (Farsi)

  504 Plan (Farsi)

- se86 (Korean)

  504 Plan (Korean)

- se86 (Spanish)

  504 Plan (Spanish)

- se86 (Urdu)

  504 Plan Urdu

- [se86 (Vietnamese)](#)

  504 Plan (Vietnamese)

## 504 Plan - Test Accommodations (Elementary School) (SS/SE-86A)

- [se86a](#)

  Elementary School Accommodations

- [se86a (Arabic)](#)

  Elementary School Accommodations (504 Plan) (Arabic)

- [se86a (Chinese)](#)

  Elementary School Accommodations (504 Plan) (Chinese)

- [se86a (Farsi)](#)

  Elementary School Accommodations (504 Plan) (Farsi)

- [se86a (Korean)](#)

  Elementary School Accommodations (504 Plan) (Korean)

- [se86a (Spanish)](#)

  Elementary School Accommodations (504 Plan) (Spanish)

- [se86a (Urdu)](#)

  Elementary School Accommodations (504 Plan) (Urdu)

- [se86a (Vietnamese)](#)

  Elementary School Accommodations (504 Plan) (Vietnamese)

## 504 Plan - Test Accommodations (Middle School) (SS/SE-86B)

- [se86b](#)

  Middle School Accommodations (504 Plan)

- [se86b (Arabic)](#)

  Middle School Accommodations (504 Plan) (Arabic)

- [se86b (Chinese)](#)

  Middle School Accommodations (504 Plan) (Chinese)

- se86b (Farsi)

  Middle School Accommodations (504 Plan) (Farsi)

- se86b (Korean)

  Middle School Accommodations (504 Plan) (Korean)

- se86b (Spanish)

  Middle School Accommodations (504 Plan) (Spanish)

- se86b (Urdu)

  Middle School Accommodations (504 Plan) (Urdu)

- se86b (Vietnamese)

  Middle School Accommodations (504 Plan) (Vietnamese)

## 504 Plan - Test Accommodations (High School)(SS/SE-86D)

- se86d

  High School Accommodations (504 Plan)

- se86d (Arabic)

  High School Accommodations (504 Plan) (Arabic)

- se86d (Chinese)

  High School Accommodations (504 Plan) (Chinese)

- se86d (Farsi)

  High School Accommodations (504 Plan) (Farsi)

- se86d (Korean)

  High School Accommodations (504 Plan) (Korean)

- se86d (Spanish)

  High School Accommodations (504 Plan) (Spanish)

- se86d (Urdu)

  High School Accommodations (504 Plan) (Urdu)

- se86d (Vietnamese)

High School Accommodations (504 Plan) (Vietnamese)

### Read Aloud or Audio Accommodation Criteria Form (SS/SE-274)

- se274

  504 Plan Read Aloud or Audio Accommodation Criteria

- se274 (Arabic)

  Read Aloud or Audio Accommodation Criteria Form - Arabic

- se274(Chinese)

  Read Aloud or Audio Accommodation Criteria Form - Chinese

- se274 (Farsi)

  Read Aloud or Audio Accommodation Criteria Form (Farsi)

- se274 (Korean)

  Read Aloud or Audio Accommodation Criteria Form (Korean)

- se274 (Spanish)

  Read Aloud or Audio Accommodation Criteria Form (Spanish)

- se274 (Urdu)

  Read Aloud or Audio Accommodation Criteria Form (Urdu)

- se274 (Vietnamese)

  Read Aloud or Audio Accommodation Criteria Form (Vietnamese)

### Special Permission Locally Awarded Verified Credit Accommodation (SPLAVC-A) Criteria Form (SS/SE-348)

- SE348

  SS/SE348 Special Permission Locally Awarded
  Verified Credit Accommodation (SPLAVC-A) Criteria Form

- Special Permission Locally Awarded Verified Credit Accommodation (SPLAVC-A) Criteria Form (se348) - Arabic

- Special Permission Locally Awarded Verified Credit Accommodation (SPLAVC-A) Criteria Form (se348) - Chinese

- Special Permission Locally Awarded Verified Credit Accommodation (SPLAVC-A) Criteria Form (se348) - Farsi

- Special Permission Locally Awarded Verified Credit Accommodation (SPLAVC-A) Criteria Form (se348) - Korean

- Special Permission Locally Awarded Verified Credit Accommodation (SPLAVC-A) Criteria Form (se348) - Spanish

- Special Permission Locally Awarded Verified Credit Accommodation (SPLAVC-A) Criteria Form (se348) - Urdu

- Special Permission Locally Awarded Verified Credit Accommodation (SPLAVC-A) Criteria Form (se348) - Vietnamese


Additional forms related to Section 504 are listed below.  **For more information on Section 504 forms or related documents please contact the Section 504 school-based coordinator (SBC) at your school.**

- 504 Plan Calculator Criteria Form (SS/SE-272)
- 504 Plan Meeting Agenda (SS/SE-339)
- 504 Plan Read Aloud or Audio Accommodation Form (SS/SE-274)
- 504 Plan (Testing) Accommodations:
    - Elementary Accommodations (SS/SE-86A)
    - Middle School Accommodations (SS/SE-86B)
    - High School Accommodations (SS/SE-86D)
- Consent to Exchange Confidential Student Information (SS/SE-79A)
- Credit Accommodation Eligibility Form (SS/SE-353)
- Local Screening Committee Report (SS/SE-14)
- Multipurpose Referral (SS/SE-5, 5A)
- Notice of Local Screening Meeting (SS/SE-83)
- Notice Not to Evaluate (SS/SE-13)
- Parent Information (SS/SE-127)
- Parent Notice of Section 504 Causality Hearing (SS/SE-220A)
- Section 504 Causality Hearing (SS/SE-220)
- Section 504:  Parent Consent for Individualized Assessment (SS/SE-86G)
- Section 504 Plan Credit Accommodations Eligibility Form (SS/SE-86H)
- Section 504 Qualification (SS/SE-85)
- Section 504 Transfer Student Documentation (SS/SE-86T)
- Special Permission Locally Awarded Verified Credit Accommodation (SPLAVC-A) Criteria Form (SS/SE-348)
- Student Audit Trail (SS/SE-8)
- Student Observation (SS/SE-23)
- Teacher Narrative (SS/SE-22)
- Virginia Special Education Procedural Safeguards Requirement (SS/SE-4)


If a student transfers to another school within FCPS, the file is to be forwarded to the new school in accordance with regulations.

The student's parent or guardian may examine his or her child's educational record upon request (see *Management of the Student Scholastic Record* manual).

# Appendix B

## IDEA and Section 504
## Brief Overview of Differences

| IDEA | Section 504 |
|---|---|
| **Primary Focus** | |
| Educational *benefit* | Equal *access* for students with disabilities |
| **Who is Covered** | |
| Handicapping conditions defined. Those with impairments that adversely affect educational performance and require special education and related services. | No eligibility categories. Those with impairments that substantially limit a major life activity. |
| **Purpose of the Plan** | |
| Goals and objectives outlined for the *student* (what the *student* will do). | Accommodations, modifications, and/or services provided to the eligible student by the *teacher(s) or relevant school staff members* (what the teacher or staff member will do). |
| **Consent** | |
| Parent consent is required for eligibility, initial services, and changes in placement. | Parent consent is required for initial Section 504 evaluations and any formal assessments. Parents are invited to participate in the evaluation meeting and in the development of the plan. |
| **Regulations** | |
| IDEA – many specifics | OCR (Office for Civil Rights) – few specifics |
| **Parent Participation** | |
| Procedural rights to participate. | Invite parent participation; procedural rights to notice of all meetings. |
| **Due Process** | |
| Due process rights. | Right to an impartial hearing. |
| **Stay Put** | |
| Last agreed-upon placement. | No stay-put provisions. |
| **Funding** | |
| All states receive federal funding. | No federal funding. |
| **Monitoring** | |
| Virginia Department of Education (VDOE) is required to develop regulations and to monitor the provision of special education. United States Department of Education (USDOE) oversees implementation. | Office for Civil Rights (OCR) monitors Section 504 compliance. |

**Appendix C**



**504 FACT SHEET**

**Section 504 of the Rehabilitation Act of 1973**
**FCPS Regulation 1454**

**Section 504 is designed to eliminate discrimination against any student with a disability in any program offered by the school division.**

**Who Is Covered?**
* Any student who has, has a record of, or is regarded as having, a physical or mental impairment that substantially limits one or more major life activity.
* Those individuals for whom there is a record of impairment, or who are regarded as having an impairment (but who are not currently identified with an impairment under Section 504) are protected from discrimination, but are not considered "qualifying students."

**What Is Required?**
* Qualifying students must have an opportunity to access all activities and programs, and cannot be denied participation because of their disability.
* Qualifying students with a disability must be offered a free appropriate public education (FAPE). FAPE is the provision of accommodations, adaptations, modifications, and/or services that provides the student an equal opportunity to participate.
* Each school must provide equal opportunities to students under Section 504 to obtain the same result, to gain the same benefits, or to reach the same level of achievement. However, this does not mean that the student WILL obtain the same result, gain the same benefit, or reach the same level of achievement.
* Transfers: If a student who is qualified with a disability under Section 504 transfers into FCPS from a non-FCPS school, the 504 school-based coordinator (SBC) must complete a 504 transfer process for the student, as soon as practicable but **no later than five school days** following enrollment and/or first day of attendance. The 504 transfer document shall be implemented until a knowledgeable committee at the receiving school convenes and develops an FCPS 504 Plan **within 30 calendar days** of the student's enrollment.

**Qualifying Factors:**
* The local screening committee (LSC) determines initial Section 504 qualification. Written parent consent is required for all initial 504 evaluations and for any formal assessments.
* The LSC must identify the presence of a physical or mental impairment and the major life activity limited by the impairment.
* The knowledgeable committee conducts reevaluations of a student's Section 504 qualification at least once every three years or more frequently as circumstances warrant.
* Current illegal use of drugs or alcohol is not an impairment protected under Section 504.

**The Plan:**

* A knowledgeable committee composed minimally of the principal or designee and a teacher of the student develops the 504 Plan for qualified students.
* The parent is invited but does not have to attend or approve of the Plan.
* The 504 Plan should reflect the unique needs of the student and relate directly to the impairment. Only the accommodations, modifications, and/or services necessary for the student to have an equal opportunity to access programs and activities should be included.
* The knowledgeable committee must meet **at least once a year** to review the 504 Plan, and update as appropriate.
* The knowledgeable committee determines if the student no longer qualifies as a student with a disability under Section 504.

**Disciplinary Protections:**

* The knowledgeable committee must conduct a causality hearing following a decision to remove a student from school for **more than ten days** in a school year.
* If there is not a direct and substantial relationship between the disability and the behavior resulting in disciplinary action, the student may be disciplined in the same manner as a nondisabled student, including cessation of educational services.
* Causality determination is not required if the student is engaging in the illegal use of drugs or alcohol, and is being disciplined for the use or possession of illegal drugs or alcohol.

**Procedural Safeguards:**

* Parents and qualified students are entitled to certain procedural safeguards.
* Inquiries may be directed to Due Process and Eligibility (571-423-4470) or the Section 504 specialist (571-423-1304).

**Appendix D**

Below is a screenshot of form SS/SE-92 (Section 504 Procedural Safeguards).  This document is available online at fcps.edu/sites/default/files/media/forms/se92.pdf.



## SECTION 504 OF THE REHABILITATION ACT OF 1973
## PROCEDURAL SAFEGUARDS

No qualified student with a disability in Fairfax County Public Schools shall, on the basis of that disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity offered by the school division.  In respect to actions regarding the identification, evaluation, and/or placement of students with disabilities under Section 504, the following procedural safeguards shall be provided:

■ Notice shall be provided to a student's parent (s) or guardian prior to evaluation, Child Find, identification, reevaluation, and/or placement.

■ Decisions regarding the identification, evaluation, accommodations, modifications, and/or services for a student qualified under Section 504 shall be made by a committee of individuals who are knowledgeable about the student.

■ The parent(s) or guardian shall have the opportunity to examine the student's educational records.

■ The recipient to which this subpart applies shall establish standards and procedures for the evaluation and placement of persons who, and will, because of handicap need or are believed to need special education or related services, ensure the following:

  1) Tests and other evaluation materials have been validated for the specific purpose for which they are used and are administered by trained personnel in conformance with the instructions provided by the producer.

  2) Tests and other evaluation material include those tailored to assess specific areas of educational need and not merely those that are designed to provide a single general intelligence quotient.

  3) Tests are selected and administered so as best to ensure that, when a test is administered to a student with impaired sensory, manual, or speaking skills, the test results accurately reflect the student's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the student's impaired sensory, manual, or speaking skills (except where those skills are factors that the test purposes to measure).

■ The student shall be re-evaluated prior to reconsideration of qualification as a student with a disability under Section 504.

■ For acts of misconduct, when a decision is made to remove a Section 504-qualified student from school for more than ten consecutive school days or when the Section 504-qualified student is subjected to a series of removals during a school year that constitute a pattern and accumulates more than ten school days, a knowledgeable committee shall convene to determine whether the student's conduct was caused by the student's disability.

■ The student's parent(s) or guardian shall have the opportunity to appeal decisions concerning the student's identification, evaluation, accommodations, modifications, services, or causality determination in a discipline case.  The parent(s) or guardian may request an administrative review, mediation, and/or impartial hearing.  Administrative review and mediation are voluntary and do not need to be completed prior to a request for an impartial hearing.  The impartial hearing consists of an opportunity for participation by the student's parent(s) or guardian and representation by counsel and a review of the impartial hearing decision.

Compliance with Section 504 is coordinated by the director, Office of Design and Construction Services (571-423-2200), when it concerns access to facilities, and by the coordinator, Due Process and Eligibility (571-423-4470), when it concerns student programs and activities.  Appeals should be sent to the coordinator of Due Process and Eligibility.  Additional information is available in Regulation 1454.

*Information from the Fairfax County Public Schools student scholastic record is released on the condition that the recipient agrees not to permit any other party to have access to such information without the written consent of the parent or eligible student.*

SS/SE-92 (5/18)

# Appendix E



## Section 504 Frequently Asked Questions

### General Questions

- **Does Section 504 qualification occur only after an evaluation?**

  Yes.  However, "evaluation" does not necessarily mean a formal test or assessment.   The evaluation is the process of gathering information from a variety of sources to help the  team make a determination regarding qualification.  If this is an initial 504 evaluation,  and/or the team believes that formal assessment is required prior to making a  determination, then written parental consent must first be obtained.

- **Which team determines whether a child qualifies under Section 504?**

  In FCPS, the local screening committee (LSC) makes the initial determination of Section 504 qualification.  Reevaluation of Section 504 qualification is determined by the knowledgeable committee.

- **What happens if a child is qualified as a student with a disability under Section 504?**

  A 504 Plan is developed to document accommodations, modifications, and/or services that are necessary for the student.

- **Which team develops a 504 Plan?**

  A 504 Plan is developed for a student by a knowledgeable committee within the student's school.  Minimally, this is a team composed of a principal or designee and at least one teacher of the student.  The parent is not a required member of the team, but it is best practice for the parent to be involved in the discussion regarding 504 Plan development.  As appropriate, the student should be included on the team.  Additional members may be solicited to join the knowledgeable committee, by request of the school or the parent, to ensure that it is truly a "knowledgeable" committee.

- **What goes into a 504 Plan?**

  A 504 Plan should include only those accommodations, modifications, and/or services that are required for the student to have equal access to the benefits of school programs and activities, to include nonacademic programs, extracurricular activities, field trips, etc.  In elementary and secondary level public schools, the 504 Plan must include all supports necessary to provide a free appropriate public education (FAPE) for qualifying students.

- **How often should the 504 Plan be reviewed?**

  The 504 Plan must be **reviewed at least annually**.

- **What happens if a student no longer requires accommodations, modifications,  and/or services to access school-related programs and activities?**

  The knowledgeable committee can meet at any time and make a determination that accommodations, modifications, and/or services should be added, adjusted, reduced, or eliminated altogether.  However, a student can remain qualified as disabled under Section

504 and  not require accommodations or services on a 504 Plan.

- **In the discipline process, must a school conduct a causality hearing for a Section 504-qualified student who is being suspended for more than ten consecutive school days in a school year or a series of suspensions that total more  than ten school days in a school year?**

    Yes.   The knowledgeable committee must convene to conduct a causality hearing.   The one exception is if the student is a current user of illegal drugs or is currently using  alcohol and is being disciplined for the use or possession of illegal drugs or alcohol.  No  causality determination is required in this case.

- **Are there procedural safeguards?**

    Yes.  *Section 504 Procedural Safeguards* (SS/SE-92) are provided to parents at several points during the process.   They are provided prior to initial evaluation, during reevaluation, with the 504 Plan, and  during any disciplinary action that may require a causality hearing.

## 504 Data Review and Evaluation

- **If a parent cannot be present or refuses to attend an initial 504 evaluation meeting, does this mean parent consent has not been given and we cannot proceed with a 504 qualification determination?**

    The committee will need to complete the first part (Data Review/Evaluation) of the *Section 504 Qualification* form (SS/SE-85) and then send home the form for parent consent.   Should the parent not consent to an initial 504 evaluation, the team **will not** proceed to make a 504 qualification decision.

- **How does the local screening committee determine if the team should be recommending a Section 504 evaluation rather than an evaluation for special education?**

    The local screening committee has the obligation to evaluate a student for special education  if there is a suspicion that the student may have a disability under the Individuals with Disabilities Education Act (IDEA).   If the student is ultimately found eligible for special education, an individualized education program (IEP) is developed.   Sometimes, the LSC may determine that a student should be evaluated under Section 504 prior to the conclusion of the special education evaluation process, if there is a strong likelihood that there is enough current data to move forward with 504 qualification.   If the LSC does not choose to consider 504 initial qualification at the same time that it is evaluating the student for special education, and the student is found ineligible for special education, and/or there is  no suspicion of a disability under IDEA, the student's qualification under Section 504 may be considered.

- **Who is responsible for completing a 504 reevaluation:  the local screening committee  or the 'knowledgeable committee'?**

    Every 504 reevaluation is completed by a knowledgeable committee.  A school may choose to hold the  meeting during the local screening agenda time in order to have access  to certain individuals, such as a school psychologist, school social worker, or related service  provider, if they are needed as members of the knowledgeable committee.  The  knowledgeable committee may meet at any time that is mutually  convenient for the team  members, including the parent and student.

- **Who runs the meeting for the initial 504 qualification?**

    The local screening committee will work as a team to decide which individual(s) will facilitate this meeting or set of meetings.  However, in general, the psychologist and/or LSC chair typically serve as the chair of the initial 504 qualification meeting.  The 504 school-based coordinator (SBC) may <u>assist</u> with meeting facilitation, when needed.

- **If a parent provides a doctor's note or a prescription for 504 qualification, or recommendations for accommodations, how does this influence the decision of the school based team?**

    All relevant information, including available private assessments and school-based information regarding the student, should be reviewed and considered by the committee when making a 504 qualification determination.  The team should ensure that multiple data points

are considered when reviewing 504 qualification, and look for patterns, trends, and alignments among the data.  It may be helpful for the school team to speak with the doctor (once parent consent is received) to qualify the information provided in the original doctor's note.

- **Is a medical or psychological diagnosis required for a student to qualify with a  disability under Section 504?**

  Per the Office for Civil Rights (OCR):

  A physician's medical diagnosis may be considered among other sources in evaluating a student with an impairment or believed to have an impairment which substantially limits a major life activity.  Other sources to be considered, along with the medical diagnosis,  include aptitude and achievement tests, teacher recommendations, physical condition, social and cultural background, and adaptive behavior.  Section 504 regulations require school districts to draw upon a variety of sources in interpreting evaluation data and making placement decisions. ([www2.ed.gov/about/offices/list/ocr/504faq.html](http://www2.ed.gov/about/offices/list/ocr/504faq.html))

  Should a knowledgeable committee determine that a medical evaluation is warranted, the parent must be given the option of either using his or her own physician (at parent's  expense) or a physician with whom FCPS contracts (at FCPS' expense).   For further  information and guidance regarding medical evaluations for students with suspected (or current) disabilities, please contact the Due Process & Eligibility office at 571-423-4470.

- **If existing data is sufficient on its own for use in the evaluation phase, in order to move forward with 504 qualification, and the parent is in agreement, does the school need to solicit the  parent's written consent?**

  For an initial evaluation, the parent must give consent for the team to use existing data to  move forward  with a 504 qualification decision.  However, for a reevaluation, parental  consent to use existing data is not required.

- **Do we have to accept a parent's request for assessments if the school-based  members of the team believe there is sufficient existing data?**

  For an initial Section 504 qualification consideration, if the committee believes that the  existing data is sufficient to use for the evaluation and to move forward to Section 504 qualification, but the parent disagrees and requests formal assessment, the team will consider that the parent is refusing consent for an initial 504 evaluation and the process stops pending resolution through appeal.   For a Section 504 reevaluation, the team may use existing data to complete the evaluation, without parent consent.   The parent may contact the Due Process and Eligibility office for further information about filing an appeal in either situation.

- **How does the knowledgeable committee determine whether a mental or physical impairment exists?**

  School teams have the responsibility to consider all available and relevant data to make  504 qualification decisions.  If appropriate data is not available, teams are obligated to recommend additional information and/or informal or formal assessments necessary to make an eligibility determination and help address the unique disability-related needs of the student.

Please be mindful of your selection of knowledgeable committee members.  Members should be chosen  based on their ability to address the needs of the student as these relate to the identified impairment.

- **Is there a specific timeline for completion of 504 testing?**

The school team must complete the assessments and return to a 504 initial qualification  or reevaluation meeting in **no more than 65 business days** following receipt of the local screening committee (LSC) referral, or in the case of a 504 reevaluation, no more than 65 days following the written notice of 504 meeting, but no later than the three-year reevaluation due date.  In most cases, it is expected that the formal assessments will be completed in less than 65 working days.

## 504 Qualification (Initial and Reevaluation)

- **If a student is not performing to his or her perceived potential, does that qualify as an impairment of a major life activity?**

  It depends.  All information about a student's functioning and performance needs to be considered when determining whether a major life activity is being significantly limited based on that student's identified impairment.  It is important that teams objectively consider all available and relevant information when making 504 qualification determinations.

- **If a parent provides a private assessment which indicates that an impairment exists, but school-based data does not reflect the same concerns, would the student still qualify under Section 504 as an individual with a disability?**

  All relevant information, including available private assessments and school-based information about the student, should be reviewed and considered by the committee when making a 504 qualification determination.  The team should ensure that multiple data points are considered when reviewing 504 qualification, and look for patterns, trends, and alignments among the data.

- **What happens if the parent provides documentation of an impairment, such as attention deficit hyperactivity disorder (ADHD), but no major life activity is limited by the impairment?  For example, consider a case in which the student is earning A's and B's in honors classes, but the parent disagrees with the knowledgeable committee and believes that his or her child should be 504 qualified and should receive a 504 Plan.**

  Teams are reminded that in order to determine whether or not a given impairment substantially limits a major life activity, the nature of the limitation needs to be assessed as to how the student functions in the absence of mitigating measures.  For example, it is possible that a student with a mental or physical impairment could be obtaining good grades in part due to the mitigating measures of medication and/or informal accommodations already being provided by the classroom teacher.  In the absence of those mitigating measures, the student in this example may indeed show evidence of substantial limitation to one or more major life activities.  Furthermore, teams need to keep in mind that a student's course grades are only one measure of potential limitation(s) caused by his or her impairment.

  If a parent disagrees with a 504 qualification, reevaluation, or 504 Plan decision by the committee, and attempts have been made to come to consensus with the rest of the team, that parent may appeal through the Due Process and Eligibility Office.

## 504 Plan

- **What is the difference between *reasonable* and *necessary* accommodations?**

  The term ***reasonable accommodation*** is a phrase that is appropriate for use in the postsecondary setting or in the workplace for individuals with disabilities who might require supports.    In the public school setting, we should be providing ***necessary*** accommodations, modifications, and/or supports to Section 504 qualified students, in order for them to receive a free appropriate public education and have equal access and opportunity.

- **What is a "service" within Section 504?**

  A service is a practice or program, or any related service for which the student has been evaluated and it has been determined the student requires to receive a free appropriate public education (FAPE).   It is important to note that if a student with a disability receives a Section 504 evaluation and is found to have intensive needs, it would be prudent for the local screening committee to consider whether that individual should be recommended for a special education evaluation.

- **What is the general education teacher's role and responsibility in managing the 504 Plan?**

  General education teachers, along with other relevant staff members working with a 504 qualified student, are required to implement the 504 Plan.

- **Is it appropriate to use the terms "as needed" or "when requested by the student" to modify an accommodation?**

  The knowledgeable committee has the obligation to ensure that all disability-related accommodations and supports identified in a student's 504 Plan are those that are required for the student to have equal opportunity to access FCPS programs and activities.   Once an accommodation and/or support is agreed upon by the knowledgeable committee, it is assumed that it is something that is required for access.   Therefore, the expectation is that if the accommodation requires further definition in order for staff to implement it appropriately, the knowledgeable committee will further define the *when/where/how* of the accommodation on the 504 Plan.   Best practice is to not simply state "as needed" or "when requested," but to further define how staff can best deliver the accommodation, support, and/or service.

- **Is it appropriate to identify, within the 504 Plan itself, the individual staff/specialists who will implement the 504 accommodations/supports/services?**

  The 504 Plan must be clear about the manner in which individual supports will be implemented.  Although in most cases, the student's teachers will be the primary implementers of the 504 Plan, there may be situations in which other professional staff might appropriately implement part or all of a 504 Plan.   The nature of a student's disability-related needs, and the corresponding 504 Plan supports, will help guide decisions about which staff should be implementing the 504 Plan.

- **If a student is qualified under Section 504, can that student access related services (such as speech/language, occupational therapy, physical therapy, counseling, etc.) on his or her 504 Plan?**

  Yes, related services may be included on 504 Plans.  If the knowledgeable committee, including the related service provider, has considered relevant evaluative data and has determined that a student requires a related service in order to access and participate in FCPS programs and activities, the committee must document the service requirement on the Plan and then implement accordingly.

  Should a school team suspect that a particular student may be eligible for special education, the team is strongly advised to make a referral to the local screening committee to consider whether a special education evaluation is appropriate to pursue at this time.

- **How should the knowledgeable committee proceed with the annual review of a student's 504 Plan when that student is in the middle of a special education evaluation?**

  Until an IEP has been consented to by the parents, the 504 knowledgeable committee should continue with the annual review of the 504 Plan.

  Should a student become special education eligible during the 504 Plan year, and an IEP is implemented, the 504 knowledgeable committee will not continue to meet for annual 504 Plan reviews or periodic (at least every 3 years) reevaluations.  Rather, it now becomes the responsibility of the IEP team to ensure that the student receives a FAPE per their disability-related needs.  In effect, the IEP will now be the guiding document rather than the 504 Plan.

- **How should the knowledgeable committee proceed when the parent no longer wants a 504 Plan in place for their child?**

  The knowledgeable committee is advised to convene a reevaluation meeting,  including the parent, to determine whether the child continues to qualify as a student with a disability under Section 504.  Should the student no longer qualify under Section 504, the 504 qualification paperwork will be sufficient documentation for discontinuing  implementation of the 504 Plan.

  Should the student continue to qualify under Section 504, the knowledgeable committee, with the parent, should review the current 504 Plan.   Perhaps there may be a way to compromise with the family to ensure that the student's disability-related needs are met while finding ways to gradually reduce the degree of external support.

- **How should the school respond to a parent's request for additional supports to be provided to his or her student in an honors-level or AP/IB course?**

  504 qualified students have a range of academic interests and capabilities.  Some of these students will benefit from advanced academic offerings.  Schools are required to ensure  that they are providing equal access and opportunity to the programs and activities that FCPS offers. FCPS is responsible for ensuring that each student is being provided the opportunity to access the courses appropriate for that student's interests and aptitudes.  It is never appropriate to deny access to an advanced course solely due to a student's need  for disability-related accommodations.

- **How should the school respond when teachers are reporting that a 504-qualified  student is not accessing the accommodations in their 504 Plan?**

  If staff are documenting a pattern of refusal related to the accommodations and/or supports/services delineated in the student's 504 Plan, it is recommended that the parents be notified of their child's refusal to access these supports, and in addition, the 504  knowledgeable committee should convene a 504  Plan meeting to review and possibly modify the current Plan.

- **What is the procedure for schools to follow when a student transfers into FCPS with a 504 Plan?**

  When a student transfers into FCPS with a 504 Plan from a non-FCPS public school, the 504 school-based coordinator (SBC) is expected to complete the 504 transfer process in the online system.  Until the 504 knowledgeable committee meets and reviews the Plan (and completes an FCPS 504 Plan), the expectation is that the school provides "comparable services" to what the incoming plan outlines.  The receiving school must hold a 504 Plan meeting within **30 calendar days** of the student's first day of enrollment.  Should the  student be due for a reevaluation, or the school team has concerns about the  student's 504 eligibility, the knowledgeable committee should also complete a 504 reevaluation meeting.

  While there is no requirement for the school to immediately update a 504 Plan that comes  from another FCPS school, in many cases, school teams may choose to do so as  differences in environments and/or resources may warrant some adjustments to ensure the  student continues to have his or her disability-related needs addressed within the new  setting.

# ADDITIONAL FAQs

**Transition Issues**

- **What is in place for students with disabilities in the post-secondary environment?**

  Nearly every college today has a disabilities services office that is a contact point for students with a disability who previously may have had an IEP or 504 Plan, and who may require accommodations/supports in college.  The IEP or 504 Plan does not "transfer over" so much as it provides documentation (along with any assessment data) that the college can use to help determine how to support the student's needs in the college environment.  In the K-12 environment, we are required to provide FAPE and accommodations/services that are necessary for the student to obtain equal access/opportunity to the school system's programs and activities.  In the college or work environment, this shifts to the provision of "reasonable accommodations."

**Private School**

- **What is FCPS' obligation to assess private school students for Section 504 eligibility?**

  FCPS is required to complete the Child Find process for any child from birth–21 within its boundaries (including students who attend private school within Fairfax County) who may be a child with a disability.  If a student is found to be 504 qualified, we should offer an initial 504 Plan for the child that would be implemented should the child enroll in FCPS.

  If the family of a private school student with a 504 Plan requests that FCPS hold another 504 Plan meeting for their child, the child's base school should hold this meeting.  FCPS is responsible for completing timely reevaluations (occurring at least once every 3 years) for 504-qualified children, including private and home-schooled students.  FCPS is not required to hold annual 504 Plan meetings, beyond the initial 504 Plan meeting, for a private or homeschooled student.  Should a parent of a non-enrolled 504-qualified student who lives in Fairfax County request a 504 Plan meeting for their child, FCPS staff are encouraged to comply with that request.

**Temporary Impairments**

- **Should we be writing a 504 Plan for a student with a broken limb, or other conditions such as a concussion that are likely to be temporary?**

  You do not need to move through the 504 Qualification/Plan process for students presenting with temporary impairments.  Schools may offer informal accommodations to these students.  In situations in which a student may require gradual phasing-in of their return to school following an injury or illness, convene a school-based team to develop a "return to learn" plan for the student.  Also, in terms of the potential need for accommodations during SOL tests or other state/division-wide testing, please contact your school's test coordinator or testing coach for more information regarding "temporary impairment" accommodations during testing.  Please note that if a student's condition that initially appeared to be temporary is now worsening or becoming longer lasting, a referral to LSC should be initiated.

**Moving From a 504 Plan to an IEP**

- **How should a school proceed when a student on a 504 Plan becomes eligible for special education and will be on an IEP?**

  Continue to implement the 504 Plan until the student's parents consent to the IEP.  As soon as the parent consents to the IEP, the 504 Plan remains in the record, but it becomes an inactive document.  Students should not be on IEPs and 504 Plans simultaneously.

  In the future, should the student be found ineligible for special education, the school will then need to complete a 504 Reevaluation, to determine if the student continues to be eligible under Section 504, and if so, an updated 504 Plan will need to be developed at that time.

**When Dyslexia is Suspected**

- **A student who is performing on grade level, but struggles with spelling and writing, was evaluated and found to not have a decoding deficit.  A computer is available for him to use for all writing tasks, and he is also receiving a word study intervention.  Would the teacher's documentation of this student's spelling and writing challenges (without use of a word processor) be sufficient grounds to state that he shows signs of dyslexia in the area of writing?**

  If there is a suspicion that this student may qualify under Section 504, please refer him to the LSC for an initial 504 qualification consideration.

  While a medical, psychological, or educational diagnosis is not necessary for a student to qualify with a disability under Section 504, please note that the mere existence of a relative academic weakness does not necessarily lead to the finding of a mental or physical impairment.  It is likely that in this type of situation, the LSC may need to gather additional data to complete a 504 evaluation.  For example, additional information regarding this student's information processing and executive functioning skills may need to be obtained.

**Accommodations for Students Identified with Dyslexia**

- **What are the "allowable" accommodations for students who have been identified with dyslexia?**

  There is no exhaustive list of accommodations/services that may be selected for a student with dyslexia, or for that matter, for a student with any particular disability.  Accommodations are chosen after the knowledgeable committee has done an appropriate evaluation of the student and his or her needs, based on disability.  That evaluation may include informal and/or formal data.

**Read Aloud or Audio Accommodations for Standards of Learning (SOL) Assessments**

- **Must the 504 knowledgeable committee review the "Read Aloud" criteria form every time we wish to consider this accommodation for a student?**

  The *Read Aloud or Audio Accommodation Criteria Form* (SS/SE-274) is meant to be utilized by the knowledgeable committee only when determining whether a student requires a read-aloud

or audio accommodation for the English:  Reading SOL.  It is not necessary for a student to meet the criteria on this form in order to receive read aloud/audio for a content (non-reading) SOL test.  It would not be uncommon for a student with dyslexia, or a student with some other disability that substantially limits the student's ability to access text, to be considered for read aloud/audio for content tests, in order to ensure that they are able to demonstrate their knowledge of the subject area without the confound of having to read and understand all of the directions/prompts first.  However, many students with dyslexia or other disabilities will not have a severe enough degree of decoding difficulty, or visual impairment, needed to qualify for read aloud/audio for the English:  Reading SOL – which is why there is a criteria form required for this accommodation.

**"Small Group" Testing**

- **Are there any plans to add "small group" to the test accommodations section of the 504 Plan?**

  Several years ago, VDOE discontinued "group size" (which encompasses small group) as a test accommodation for SOL tests.  It is now considered to be a "test adjustment" that is available to ANY student (general education, Section 504 eligible, or special education eligible).

  The test accommodations section of the 504 Plan includes the accommodations that VDOE allows for the SOL tests.  It does not include any test adjustments that are universally allowed.

**IEP vs. 504 Plan Accommodations**

- **We have a student who has "teacher directed breaks during classroom assessments" on his 504 Plan.  Are we allowed to also have this accommodation in place for SOL tests?  We have provided this accommodation to students on IEPs, but we do not have experience providing this same accommodation to students on 504 Plans.**

  The issue is whether a student with a documented disability requires a particular accommodation in order to fairly access an SOL test, regardless of whether the student has a 504 Plan or IEP.  If the student requires this accommodation during classroom assessments, it seems likely that the student may also require it for SOL assessments.  The knowledgeable committee will need to convene a 504 Plan meeting to consider whether this accommodation is warranted.  If there is consensus on the appropriateness of this accommodation, the committee will document its selection on the test accommodation section of the 504 Plan (#31B – frequent breaks).

**Functional Behavior Assessment and Behavior Intervention Plan**

- **What is the expectation for schools when completing a Functional Behavior Assessment (FBA) and Behavior Intervention Plan (BIP) for a student on a 504 Plan?**

  The FBA and BIP for a student on a 504 Plan should be developed by the knowledgeable committee, including staff who typically support these processes (e.g., school psychologist, social worker, behavior intervention teacher, etc.)  Please use the SS/SE-217 and SS/SE-218 forms to complete this work.

  The 504 Plan committee should reference the existence of an FBA and BIP within the 504 Plan.  Copies of the FBA and BIP should be attached in SEA-STARS (historical documents)

as well as in the hard-copy scholastic record (see the Management of the Student Scholastic Record manual (https://www.fcps.edu/sites/default/files/media/forms/Management%20of%20the%20Student%20Scholastic%20Record.pdf)  for the organization of Section 504 records).

**Homebound Services**

- **If a student on a 504 Plan becomes eligible for homebound services, how should the 504 knowledgeable committee proceed?**

  During the period of time that the student continues to be eligible for homebound services, the 504 knowledgeable committee should convene at least once every 9 weeks to ensure that the 504 Plan is being implemented with fidelity, and to discuss any changes to services that may be warranted. If the 504 knowledgeable committee determines a change in service is required, the student's 504 case manager (after consulting with the 504 school based coordinator) is responsible for sending the updated 504 Plan to the Office of Out of School Support.

# Appendix F

## Resources

The Section 504 Regulations (34 C.F.R. Part 104): www2.ed.gov/policy/rights/reg/ocr/edlite-34cfr104.html

United States Department of Justice Civil Rights Division: Information and Technical Assistance on the Americans with Disabilities Act at ada.gov/

United States Department of Education: Frequently Asked Questions About Section 504 and the Education of Children with Disabilities at www2.ed.gov/about/offices/list/ocr/504faq.html

Council of Educators for Students with Disabilities: Section 504 Resources: https://www.504idea.org/cesd-home/resources-for-new-section-504-coordinators/

Fairfax County Public Schools, Section 504 Information (public site): https://www.fcps.edu/academics/academic-overview/special-education-instruction/special-education-procedural-support/Section-504-information

# Appendix G

## Acronyms

| ACRONYM | EXPLANATION |
|---|---|
| 504 SBC | School Based Coordinator |
| ADA | Americans With Disabilities Act |
| ADHD | Attention Deficit Hyperactivity Disorder |
| CST | Child Specific Team |
| DPE | Due Process and Eligibility |
| ELs | English Learners |
| ELLs | English Language Learners |
| ELP | English Language Proficiency |
| EOC | End of Course |
| ESOL | English for Speakers of Other Languages |
| FAPE | Free Appropriate Public Education |
| FCPS | Fairfax County Public Schools |
| HCP | Health Care Plan |
| IDEA | Individuals With Disabilities Education Act |
| IEP | Individualized Education Program |
| LSC | Local Screening Committee |
| OCR | Office for Civil Rights |
| MTSS | Multi-Tiered Systems of Support |
| PLC-RT | Professional Learning Community-Response Team |
| POC | Point of Contact |
| PSL | Procedural Support Liaison |
| SOL | Standards of Learning |
| SWD | Students With Disabilities |
| TAT | Teacher Assistance Team |
| VDOE | Virginia Department of Education |



Fairfax County Public Schools

## Prior Written Notice

Date: 12/21/2021   RE: ██████████          ID NO.: ███████     School: Laurel Hill Elementary School

**Pamela Ononiwu**
**8500 Reformatory Wy #107**
**Lorton, VA 22079**

Dear **Pamela Ononiwu**,

The Individuals with Disabilities Education Act requires that a school division provide written notice to parents when the school division proposes or refuses to initiate or change the identification, evaluation, or educational placement of a child, or the provision of a free appropriate public education (FAPE).

During a **Eligibility** meeting on **12/17/2021**, the following action was **Proposed** by Fairfax County Public Schools (FCPS):

**At the reevaluation meeting, FCPS team members proposed that no additional data was required to determine whether ██████ continues to be a child with a disability.**

**At the eligibility meeting, the eligibility committee determined that ██████ continues to be eligible for special education services under the category of emotional disability.**

The reason FCPS proposes or refuses the action:

**Based on the review of current and available information, the reevaluation committee determined that the data is sufficient to determine whether ██████ continues to have a disability and is in need of special education.**

**██████ continues to be eligible for special education services under the category of emotional disability due to her history of anxiety and its adverse effect on her educational performance which necessitates specially designed instruction.**

Description of other options considered by FCPS and why they were rejected:

**During the reevaluation meeting, the committee considered requesting additional data for eligibility purposes but decided that it was not needed.**

**The eligibility category of other health impairment was also considered, but the criteria were not met. ██████ does have a documented health problem.  Documentation by Pediatric Cardiology dated August 17, 2021 provided by Ms. Ononiwu reports that ██████ is at risk of sudden cardiac death from possible viral exposure. ██████ has a history of anxiety and trauma followed by a private therapist documented by Aarti Kapoor, MD dated December 14, 2021 and provided by Ms. Ononiwu.  The eligibility committee determined ██████'s documented health problems do not result in limited strength, vitality, or alertness. The adverse effect on ██████'s educational performance and her need for specially designed instruction are due to her anxiety documented under emotional disability.**

Description of each evaluation procedure, test, record or report FCPS used as a basis for the proposed or refused action:

**2018 FCPS Multi-disciplinary evaluations (Sociocultural, Psychological, and Educational), hearing and vision screenings, classroom observations, student record review, FCPS universal screenings, reading assessments, math assessments, classroom-based assessments, work samples, and teacher narrative.**
**August 17, 2021: note from a pediatric cardiologist**
**December 14, 2021:  note from a pediatrician**
**Summer 2021 recovery services:  teacher input/notes, work samples**
**2020-2021 school year: teacher input, classroom assessments, universal screener**
**Parent and teacher input**

Description of other factors relevant to FCPS' proposal or refusal:

**Although additional data was not required to determine eligibility, the IEP reevaluation committee is recommending assessments to assist the IEP team in determining whether any additions and/or modifications to the special education and related services for this student are needed.**

**Ms. Ononiwu disagrees with the eligibility committee's determination that the criteria for other health impairment are not met. She believes that ██████ demonstrates limited strength, vitality, or alertness due to her medical condition and therefore requires specially designed instruction as a student with an other health impairment.  The eligibility committee determined that ██████ displays limited engagement and withdrawal behaviors within the classroom setting due to her anxiety documented under emotional disability and therefore does not require specialized instruction as a student with an other health impairment.**

Information from the Fairfax County Public Schools student scholastic record is released on the condition that the recipient agrees not to permit any other party to have access to such information without the written consent of the parent or of the eligible student.



Fairfax County Public Schools
**Prior Written Notice**

Date: 12/21/2021   RE: ███████████   ID NO.: ████████   School: Laurel Hill Elementary School

**The IEP team will reconvene to continue developing ████'s annual IEP.**

Parents of a child with a disability have protection under the procedural safeguards including the right to appeal the proposal or refusal of the action described in this notice. A copy of *Your Family's Special Education Rights (Virginia Procedural Safeguards Notice)* has previously been provided to you. Additional copies of this document are available at your child's school or on-line at https://www.fcps.edu/academics/academic-overview/special-education-instruction/forms-related-special-education . If you have questions or desire assistance understanding the provisions of these safeguards, please contact **Due Process & Eligibility** at **571-423-4470**.

Sincerely,
**Carolyn Edner**

cc:  Student Scholastic Record, Laurel Hill Elementary School

Information from the Fairfax County Public Schools student scholastic record is released on the condition that the recipient agrees not to permit any other party to have access to such information without the written consent of the parent or of the eligible student.



Fairfax County Public Schools
**Prior Written Notice**

Date: 08/26/2022   RE: ██████████      ID NO.: ████████      School: Laurel Hill Elementary School

**Pamela Ononiwu**
**8500 Reformatory Wy #107**
**Lorton, VA 22079**

Dear **Pamela Ononiwu**,

The Individuals with Disabilities Education Act requires that a school division provide written notice to parents when the school division proposes or refuses to initiate or change the identification, evaluation, or educational placement of a child, or the provision of a free appropriate public education (FAPE).

During an **IEP** meeting on **08/16/2022**, the following action was **Proposed** by Fairfax County Public Schools (FCPS):

**The IEP team met on December 10, 2020, August 31, 2021, September 7, 2021, January 19, 2022, January 28, 2022, February 14, 2022, March 15, 2022, April 12, 2022, May 2, 2022, May 20, 2022, June 3, 2022, July 7, 2022, July 12, 2022, and August 16, 2022 to develop an initial IEP and to address your request for placement in a private school for ██████.**

**On January 18, 2022, FCPS proposed evaluations in the areas of psychological, sociocultural, and educational. You provided consent on January 20, 2022, and the evaluations were completed in Winter-Spring 2022.**

**On March 15, 2022, FCPS proposed collection of data for the Functional Behavior Assessment (FBA) process. On April 14, 2022, you provided consent for FBA data collection.**

**On July 7, 2022, FCPS proposed an audiological assessment.  You provided consent on July 7, 2022, and the assessment was conducted on August 11, 2022.**

**FCPS discussed and proposed goals and objectives in ██████'s identified areas of need (social skills, executive functioning, reading, writing/written language, mathematics, and behavior improvement-classroom behavior) and classroom and testing accommodations, and Virginia Growth and Standards of Learning assessments. FCPS proposed a total of 29.75 hours per week of emotional disability services, provided in a special education setting.  FCPS proposed 1 hour per month of counseling services to be provided in a special education setting.  FCPS proposed placement in a public separate day school to be provided at Burke School.**

**FCPS proposed extended school year services for 9 hours per week from July 12, 2022 to July 15, 2022 and 15 hours per week from July 18, 2022 to August 5, 2022 for a total of 54 hours of emotional disability services.**

The reason FCPS proposes or refuses the action:

**Based on current and available data, FCPS believes the proposed goals, accommodations, primary and related services, and ESY address ██████'s areas of need and will support her in meeting her IEP goals and making progress in the general education curriculum.  FCPS believes that this proposal provides ██████ with a free and appropriate public education in the least restrictive setting with placement at a public separate day school (Burke School). She requires a highly structured environment with clear expectations and frequent access to clinical and behavioral support, with a low student to teacher ratio, and direct and explicit instruction in social skills and coping strategies which can be provided at Burke School.**

**All IEP team members believe that ESY services are warranted for ██████ due to special circumstances that include progress in academics and interfering behaviors which have impacted her progress over the 2021-2022 school year, and the fact that the IEP had not yet been implemented because it was still in the process of being developed.**

**Psychological, educational, and socio-cultural evaluations were proposed to assist the IEP team in determining whether any additions and/or modifications to ██████'s present levels of performance, goals and objectives, special education and related services are required.**

**Due to concerns regarding ██████'s behavior towards peers and adults, the IEP team members reviewed current behavioral data for the development of an FBA.**

**SOL and VGA assessments were proposed as they are the most appropriate state assessments for ██████ to demonstrate her learning in the general education curriculum.**

**You indicated concerns that ██████ failed her hearing screening on June 2, 2022. Additionally, you shared that there is a family history of hearing loss. You were considered that a possible hearing loss could have impacted the evaluations that**

Information from the Fairfax County Public Schools student scholastic record is released on the condition that the recipient agrees not to permit any other party to have access to such information without the written consent of the parent or of the eligible student.



Fairfax County Public Schools
**Prior Written Notice**

Date: 08/26/2022   RE: ███████████       ID NO.: ████████     School: Laurel Hill Elementary School

were recently conducted and could also impact her ability to communicate her needs and wants.  August 2022 audiological result indicated that █████ is not experiencing a hearing loss and has normal hearing in both ears.

Description of other options considered by FCPS and why they were rejected:

On March 15, 2022, you inquired if ██████ required an additional goal in the area of mathematics.  The current data and available data did not support the need for a goal in this area. However, the IEP team agreed to collect additional data to determine whether ██████ requires a number sense goal.

FCPS considered services and placement in the base school setting at Laurel Hill ES and comprehensive services site (CSS) at Saratoga ES. At this time, FCPS does not believe that base school or CSS services will provide █████ with FAPE in the least restrictive setting as she requires a highly structured environment with clear expectations and frequent access to clinical and behavioral support with low student to teacher ratio and direct and explicit instruction in social skills and coping strategies.

FCPS considered your request for a private day level of placement for █████. FCPS team members believe that private day level of service is not appropriate to meet █████'s needs in the least restrictive setting and provide FAPE. Additionally, the team does not have data around the need for a private placement.  Additionally, school team members note that specialized instruction has not been able to be delivered to █████, as an IEP has not been consented to, to date. At this time, placing her outside of the public school system is too restrictive and █████'s needs can be met in the FCPS continuum, specifically at Burke School.

Description of each evaluation procedure, test, record or report FCPS used as a basis for the proposed or refused action:

Parent input
Teacher input
FCPS Psychological Evaluation (March 2022)
FCPS Educational Evaluation (February 2022)
FCPS Sociocultural Assessment (May 2022)
Classwork, writing samples (SY 2020-2021, summer 2021 recovery services, 2021-2022)
DRA2 (February 2022)
DRA2 progress monitoring (SY 2020-2021)
QRI and DSA (July 2021)
Universal Screener, iReady (SY 2020-2021, 2021-2022)
Language Arts eCart/Horizon Assessments (SY 2020-2021)
Tests and quizzes (SY 2020-2021, 2021-2022)
Attendance information (SY 2021-2022)
FBA data (March-May 2022)
Letter from pediatric cardiologist (August 2021)
FCPS Audiological Evaluation (August 11, 2022)
Parent email including private teacher comments (July 12, 2022)

Description of other factors relevant to FCPS' proposal or refusal:

█████'s IEP meetings were part of a VDOE facilitated IEP process.

You requested virtual learning/ADA accommodations and submitted medical documentation from a pediatric cardiologist on August 17, 2021.  This request was received by the school team on August 18, 2021.  The request was denied because the school received the petition after the enrollment period had closed.  Given the medical notation, you were contacted by the school social worker and were advised about the process to pursue medical homebound.  You did not pursue medical homebound instruction. █████'s classroom teacher provided grade level materials and access to the learning management system (Schoology), until █████ began attending in person classes on December 13, 2021.

An eligibility meeting was held on December 17, 2021. █████ continues to be eligible as a student needing special education services.  Although additional data was not required to determine eligibility, the IEP reevaluation committee recommended assessments to assist the IEP team in determining whether any additions and/or modifications to the special education and related services for █████ were needed.  FCPS members of the IEP team proposed educational, socio-cultural, and psychological assessments.  You provided consent, and those evaluations were completed.

FCPS received a letter from your attorney dated April 27, 2022 indicating that you were going to withdraw █████ from FCPS and place her in a private school.  A unilateral letter of withdrawal was sent on April 29, 2022 to your attorney, Mr. DeVinney regarding your request for private school placement. On May 2, 2022, the IEP began discussing your request for private

Information from the Fairfax County Public Schools student scholastic record is released on the condition that the recipient agrees not to permit any other party to have access to such information without the written consent of the parent or of the eligible student.



Fairfax County Public Schools

**Prior Written Notice**

Date: 08/26/2022  RE: ██████████     ID NO.: ████████     School: Laurel Hill Elementary School

**school placement.  When FCPS requested the name of the private school ████ was attending, you indicated that at this time, you had not selected a private school for ████ , and she would continue attending FCPS. Your attorney shared that ████ was receiving private tutoring, but you declined to provide FCPS with a school name, teacher name, instructional data, or progress monitoring.  You also shared that you would be requesting private school placement at the school division's expense. On July 12, 2022, you provided an email with the teacher name redacted that described the content discussed during the 2 sessions.**

**You and your attorney shared concerns related to ████ being bullied at school. You shared that your priority for ████ is for her to feel safe and welcomed and is hopeful that the issues can be resolved.  On May 2, 2022, the principal indicated that the bullying allegations had been investigated. She shared the results of the investigations with the IEP team. During the investigations, the principal shared with the IEP team that she also learned about allegations that ████ was bullying other students. On August 16, 2022, you continued to express your concerns about the discipline actions being taken towards ████ and that the school team at Laurel Hill has not taken the bullying allegations seriously.**

**During an IEP meeting on July 12, 2022, FCPS members of the IEP team believed that there was sufficient information to draft an ESY proposal for ████ .  On July 13, 2022, you were sent a letter of agreement outlining ESY services to include goals and services for ████ to begin on July 12, 2022 and end on August 5, 2022.  To date, FCPS has not received a response to the letter of agreement regarding ESY and ████ did not attend ESY.**

**The IEP team agreed to reconvene to review data to determine if a number sense goal is required in the area of mathematics, once the currently proposed IEP is implemented.**

**FCPS agreed to reconvene in Fall 2022, if you still continue to have questions and concerns regarding the proposed goals and objectives and to consider the need for recovery services.**

**You expressed concerns regarding FBA data, and the FCPS IEP team members agreed to collect additional data to inform the FBA process. The data collected in Spring 2022 was shared with you electronically on May 31, 2022. On July 7, 2022, the IEP team reviewed the new and existing data. You expressed your disagreement with the data presented and the lack of specificity with the data. FCPS provided the raw data to you electronically on July 11, 2022.  FCPS also agreed to reconvene the IEP in Fall 2022 to address FBA data.  While the IEP team reviewed FBA data collected in Spring 2022, FCPS team members proposed that additional data be collected in Fall 2022 in order to develop an FBA.**

**Despite the results of the audiological assessment conducted on August 11, 2022, you believe ████ continues to require monitoring around her hearing, particularly in the right ear. FCPS team members will invite an audiologist to a future IEP meeting.**

**You were provided a copy of this IEP proposal via e-mail on August 17, 2022.  To date, FCPS has not received your consent decision regarding this IEP proposal.  Given the proposal dated August 16, 2022 is an initial IEP proposal, ████ will continue to be a general education student who receives the services and accommodations outlined in her Section 504 plan until FCPS receives your consent decision.**

Parents of a child with a disability have protection under the procedural safeguards. A copy of *Your Family's Special Education Rights (Virginia Procedural Safeguards Notice)* has previously been provided to you. Additional copies of the procedural safeguards document are available at your child's school or online at https://www.fcps.edu/academics/academic-overview/special-education-instruction/forms-related-special-education. If you have questions concerning the procedural safeguards or desire assistance understanding the provisions of these safeguards, please contact **Due Process & Eligibility** at **571-423-4470**.

Sincerely,

**Carolyn Edner**

cc:  Student Scholastic Record, Laurel Hill Elementary School

Information from the Fairfax County Public Schools student scholastic record is released on the condition that the recipient agrees not to permit any other party to have access to such information without the written consent of the parent or of the eligible student.



CONFIDENTIAL

Fairfax County Public Schools
## Manifestation Determination Review

### MDR Cover Page

| Student Name | | ID Number | | Date of MDR Meeting |
|---|---|---|---|---|
| ████████ | | ████ | | 01/23/2024 |

| Base School | | Current Attending School | |
|---|---|---|---|
| Robinson Middle School | | Robinson Middle School | |

| Grade | Date of Birth | | Family Home Language | ELP Level |
|---|---|---|---|---|
| 07 | ██/2011 | | English | |

| Parent/Guardian | Home Phone | Work Phone |
|---|---|---|
| Pamela Ononiwu | ████████ | ████████ |
| | E-Mail: ████████ | E-Mail: |

| Parent/Guardian | Home Phone | Work Phone |
|---|---|---|
| | E-Mail: | E-Mail: |

| Student Address | | | | |
|---|---|---|---|---|
| ████████ | | Burke | VA | 22015 |
| Number and Street | Apartment Number | City and State | | Zip Code |

| Most Recent Eligibility Date | 3-Year Reevaluation Date | Date this IEP will be Reviewed |
|---|---|---|
| 12/17/2021 | 12/17/2024 | 01/18/2019 |

Area(s) of Eligibility    Emotional Disability

Date of this MDR Meeting    01/23/2024

| MDR Team: Who participated in and/or provided input for this MDR? | | Date |
|---|---|---|
| Parent/Guardian | Pamela Ononiwu | 01/23/2024 |
| Student | | |
| Psychologist | Erika King | 01/23/2024 |
| General Ed Teacher | Victoria Karg | 01/23/2024 |
| Principal/Designee | Malicia Braxton | 01/23/2024 |
| Special Education Teacher | Samantha Kehn-Batista | 01/23/2024 |
| Special Education Teacher | Audrey Hardwick | 01/23/2024 |
| Procedural Support Liaison | Kerilynn Sims | 01/23/2024 |
| Counselor | Jamee Lyons | 01/23/2024 |
| Attorney for the Parent | Hank Bostwick | 01/23/2024 |

Title of Team Member Responsible for Sharing Information in the IEP with All Service
Providers:    Case Manager

*Information from the Fairfax County Public Schools student scholastic record is released on the condition that the recipient agrees not to permit any other party to have access to such information without the written consent of the parent or of the eligible student.*

CONFIDENTIAL

Fairfax County Public Schools
## Manifestation Determination Review

**FCPS**

Date: 01/23/2024   RE: ▉▉▉▉▉▉▉▉   ID NO. ▉▉▉▉▉   School: Robinson Middle School

Your child ▉▉▉▉▉▉▉▉, was

- ☑ referred to the Division Superintendent (which could result in a long term suspension, reassignment, or a recommendation for expulsion being forwarded to the School Board).

As required by federal and state regulations governing special education programs, Fairfax County Public Schools (FCPS) must hold a manifestation determination review (MDR). The purpose of this review is to assess the relationship between your child's disability(ies), Emotional Disability, and the conduct subject to the disciplinary action.

The alleged conduct resulting in this review is

Assault/Battery of Non-staff

Review the following information:

| | |
|---|---|
| ☑ Incident report | ☑ Parent Information |
| ☑ Most recent eligibility reports, assessments, observations | |
| ☑ Other Information | |

Current Section 504 Plan; Parent provided Private Medical Letter from Aarti Kapoor, MD (Dated: 12/9/2021); Current draft IEP proposal (Meeting dates spanning June 2023 - present)

FBA was proposed within the developing IEP proposal (Meeting date: 07/28/2023); Parent shared that she does not recollect being sent the consent form for the FBA. FCPS staff responded that they will provide a copy of the consent form.

Parent requested a brief recess from the meeting to access information from her cellular device. FCPS staff provided a 25 minute recess and then continued.

Consider all written and oral data presented in order to answer:

| YES | NO | |
|---|---|---|
| ☐ | ☑ | The conduct was caused by or had a direct and substantial relationship to the student's disability(ies)? |
| ☐ | ☑ | The conduct was a direct result of the school division's failure to implement the IEP? |

If either question above is answered "yes", then the determination is that the conduct is a manifestation.

| Team Determination |
|---|
| ☑ The conduct subject to disciplinary action is not a manifestation of the student's disability. |
| Even though the conduct is not a manifestation of the student's disability, the IEP team should consider whether to conduct an FBA/BIP. |

Decision Rationale:

After a review of all current and available data, FCPS staff determined that Assault/Battery of Non-staff is not a manifestation of ▉▉▉▉'s disability. While an IEP has not yet been able to be implemented, ▉▉▉▉'s current Section 504 plan has been implemented with fidelity. The IEP team has convened 10 times (spanning June 2023 - present) to develop her Initial IEP and will continue to meet to finish developing the proposal. There were also an additional 4 mutually agreed upon meeting dates that the FCPS members of the IEP team convened, but the parent was not in attendance and no longer able to attend. There was no content covered during those 4 meetings. FCPS staff determined that the conduct is not a direct result of the school division's failure to implement the IEP.

*Information from the Fairfax County Public Schools student scholastic record is released on the condition that the recipient agrees not to permit any other party to have access to such information without the written consent of the parent or of the eligible student.*



**FCPS**

CONFIDENTIAL

Fairfax County Public Schools
**Manifestation Determination Review**

Date: 01/23/2024   RE: ██████████   ID NO.: ███████   School: Robinson Middle School

If the MDR is a result of a referral to the Division Superintendent, or a recommendation for exclusion, or reassignment, this determination will be forwarded to the Superintendent's Hearing Officer for consideration of further disciplinary action.

A copy of *Your Family's Special Education Rights (Virginia Procedural Safeguards Notice)* has previously been provided to you.

Additional copies of the procedural safeguards document are available at your child's school or online at https://www.fcps.edu/academics/academic-overview/special-education-instruction/forms-related-special-education. If you have questions concerning the procedural safeguards or desire assistance understanding the provisions of these safeguards, please contact Due Process & Eligibility at 571-423-4470.

*Information from the Fairfax County Public Schools student scholastic record is released on the condition that the recipient agrees not to permit any other party to have access to such information without the written consent of the parent or of the eligible student.*



CONFIDENTIAL

Fairfax County Public Schools
## Manifestation Determination Review

### MDR Cover Page

| Student Name ▉ | ID Number ▉ | Date of MDR Meeting 02/02/2024 |
|---|---|---|

| Base School    Robinson Middle School | Current Attending School    Robinson Middle School |
|---|---|

| Grade    07 | Date of Birth    ▉ 2011 | Family Home Language    English | ELP Level |
|---|---|---|---|

| Parent/Guardian    Pamela Ononiwu | Home Phone ▉ | Work Phone ▉ |
|---|---|---|
|  | E-Mail: ▉ | E-Mail: |
| Parent/Guardian | Home Phone ▉ | Work Phone |
|  | E-Mail: | E-Mail: |

| Student Address |  |  |  |
|---|---|---|---|
| ▉ |  | Burke    VA | 22015 |
| Number and Street | Apartment Number | City and State | Zip Code |

| Most Recent Eligibility Date    12/17/2021 | 3-Year Reevaluation Date    12/17/2024 | Date this IEP will be Reviewed    01/18/2019 |
|---|---|---|

Area(s) of Eligibility    Emotional Disability

Date of this MDR Meeting    02/02/2024

| MDR Team: Who participated in and/or provided input for this MDR? | Date |
|---|---|
| Parent/Guardian    Pamela Ononiwu | 02/02/2024 |
| Student | |
| Psychologist    Erika King | 02/02/2024 |
| General Ed Teacher    Victoria Karg | 02/02/2024 |
| Principal/Designee    Malicia Braxton | 02/02/2024 |
| Special Education Teacher    Samantha Kehn-Batista | 02/02/2024 |
| Special Education Teacher    Audrey Hardwick | 02/02/2024 |
| Procedural Support Liaison    Kerilynn Sims | 02/02/2024 |
| Counselor    Jamee Lyons | 02/02/2024 |
| OSEPS Program Manager    Mary McGreevy | 02/02/2024 |

| Title of Team Member Responsible for Sharing Information in the IEP with All Service Providers:    Case Manager |
|---|

Information from the Fairfax County Public Schools student scholastic record is released on the condition that the recipient agrees not to permit any other party to have access to such information without the written consent of the parent or of the eligible student.

CONFIDENTIAL

Fairfax County Public Schools
## Manifestation Determination Review

**FCPS**

Date: 02/02/2024   RE: ████████████   ID NO. ████████   School: Robinson Middle School

Your child, ████████████, was

☑ referred to the Division Superintendent (which could result in a long term suspension, reassignment, or a recommendation for expulsion being forwarded to the School Board).

As required by federal and state regulations governing special education programs, Fairfax County Public Schools (FCPS) must hold a manifestation determination review (MDR). The purpose of this review is to assess the relationship between your child's disability(ies), Emotional Disability, and the conduct subject to the disciplinary action.

The alleged conduct resulting in this review is

On December 6, 2023, assault/battery of a non-staff member which took place in the student bathroom.

Review the following information:

☑ Incident report             ☑ Parent Information

☑ Most recent eligibility reports, assessments, observations

☑ Other Information

Current Section 504 Plan; Parent provided Private Medical Letters from Aarti Kapoor, MD (Dated: 12/9/2021, 1/29/2024); Annual IEP draft (Meeting dates spanning June 2023 - present)

Consider all written and oral data presented in order to answer:

| YES | NO | |
|---|---|---|
| ☐ | ☑ | The conduct was caused by or had a direct and substantial relationship to the student's disability(ies)? |
| ☐ | ☑ | The conduct was a direct result of the school division's failure to implement the IEP? |

If either question above is answered "yes", then the determination is that the conduct is a manifestation.

| Team Determination |
|---|
| ☑ The conduct subject to disciplinary action is not a manifestation of the student's disability. |
| Even though the conduct is not a manifestation of the student's disability, the IEP team should consider whether to conduct an FBA/BIP. |

Decision Rationale:

After a review of all current and available data as well as the new parent provided medical letter dated 1/29/2024, FCPS staff determined that assault/battery of a non-staff member which took place in the student bathroom is not a manifestation of ████'s disability.

While an IEP has not yet been able to be implemented, ████'s current Section 504 plan has been implemented with fidelity. The IEP team has convened 10 times (spanning June 2023 - present) to develop her Initial IEP and will continue to meet to finish developing the proposal. There were also an additional 5 mutually agreed upon meeting dates that the FCPS members of the IEP team convened, but the parent was not in attendance and no longer able to attend. There was no content covered during those 5 meetings. FCPS staff determined that the conduct is not a direct result of the school division's failure to implement the IEP.

If the MDR is a result of a referral to the Division Superintendent, or a recommendation for exclusion, or reassignment, this determination will be forwarded to the Superintendent's Hearing Officer for consideration of further disciplinary action.

A copy of Your Family's Special Education Rights (Virginia Procedural Safeguards Notice) has previously been provided to you.

Information from the Fairfax County Public Schools student scholastic record is released on the condition that the recipient agrees not to permit any other party to have access to such information without the written consent of the parent or of the eligible student.



CONFIDENTIAL

Fairfax County Public Schools
## Manifestation Determination Review

Date: 02/02/2024  RE: ███████  ID NO.: ██████  School: Robinson Middle School

Additional copies of the procedural safeguards document are available at your child's school or online at https://www.fcps.edu/academics/academic-overview/special-education-instruction/forms-related-special-education. If you have questions concerning the procedural safeguards or desire assistance understanding the provisions of these safeguards, please contact Due Process & Eligibility at 571-423-4470.

Information from the Fairfax County Public Schools student scholastic record is released on the condition that the recipient agrees not to permit any other party to have access to such information without the written consent of the parent or of the eligible student.

**VIRGINIA DEPARTMENT OF EDUCATION**
**DIVISION OF SPECIAL EDUCATION AND STUDENT SERVICES**
**OFFICE DISPUTE RESOLUTION AND ADMINISTRATION SERVICES**
**VDOE CASE:  No. 24-052**

## AMENDED DECISION

| | |
|---|---|
| Fairfax County Public Schools | Pamela Ononiwu |
| **School Division** | **Name of Parents** |
| | |
| Dr. Michelle C. Reid | ████████ |
| **Division Superintendent** | **Name of Child** |
| | |
| John F. Cafferky, Esquire | |
| Ashley C. Hamilton, Esquire | |
| Blankingship & Keith, PC | Dr. Kandise Lucas |
| **Counsel Representing LEA** | **IDEA Advocate for the Parent/Child** |
| | |
| Robert J. Hartsoe, Esquire | Parents/Child |
| **Hearing Officer** | **Party Initiating Hearing** |

## AMENDED DECISION[1]

The Fourth Report is incorporated herein by reference.  The LEA is ordered to file all transcripts from previous hearings as soon as practical, to be part of the record.  Upon receipt, such will be forwarded to the Parties and returned to the LEA per Regulations.  The original Due Process Request was filed under IDEA.  The matter is dismissed on the basis that IDEA issues were decided and the remaining Section 504 issues were declined per Regulations.  The filing of the IDEA matter does not trigger Section 504 deadlines.  In other words, the Parent/Child may review the opportunity to file a purely Section 504 Due Process Request under the LEA's independent Section 504 vehicle to adjudication purely Section 504 matters.


_____                    _____
Hearing Officer                                          March 27, 2024
                                                                Date


---

[1] The original Decision was amended to provide "Appeal, Implementation and Prevailing Party Notifications," an oversight given the Section 504 allegations.  Similarly, the pleading was amended to reference an Advocate in IDEA matters.  Overall, this pleadings were unclear as to the role of this Hearing Officer–IDEA vs. Section 504.

1

## IDEA APPEAL, IMPLEMENTATION AND PREVAILING PARTY NOTIFICATIONS

1.  **Appeal.**  Pursuant to 8 VAC 21-81-T and §22.214 D of the Virginia Code, this decision is final and binding unless either party appeals in a federal district court within 90 days of the date of this decision, or in a state court within 180 days of the date of this decision.

2.  **Implementation.**  The LEA shall develop and submit an implementation plan within 45 calendar days of the rendering of a decision.

3.  **Prevailing Party.**  The LEA was deemed the prevailing party on the discrete IDEA issues raised by the pleadings.

## DEADLINES

| | |
|---|---|
| Filing Date: | February 6, 2024 |
| Date Hearing Officer Appointed: | February 7, 2024 |
| Administrative Hearing: | February 14, 2024 at 10:30 AM |
| Date Resolution scheduled: | February 15, 2024 |
| Date Resolution conducted: | February 15, 2024 |
| PreHearing: | February 21, 2024 |
| Last day of Resolution Period: | March 15, 2024 |
| Five Day Rule Deadline: | February 26, 2024 |
| Due Process Hearing: | March 4, 5 & 7, 2025[2] |
| Decision date regarding IDEA Expedited: | March 19, 2024 |

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of March, 2024, a true and accurate copy of this pleading was mailed, *via* email & First-class, postage prepaid mail, to:

Pamela Ononiwu, *pro se*
██████████  ████  █
Burke, Virginia 22015
Email: ████████████████
Parent/Child

John F. Cafferky, Esquire
Ashley C. Hamilton, Esquire
Blankingship & Keith
4200 University Drive, Suite 300
Fairfax, Virginia  22030
Email:  jcafferky@bklawva.com
Counsel for LEA

---

[2] By Party agreement, the Section 504 matters were continued to March 15 & 18, 2024.

Kathryn D. Jones, Esquire
Coordinator for Due Process Services
ODRAS/VDE
PO Box 2120
Richmond, Virginia  23218-2120

Brian Miller, Esquire
2119 West Main Street
Richmond, Virginia  23220
VDOE Evaluator

Robert J. Hartsoe